**EXHIBIT A**
Settlement Agreement Between the United States of America and PWD.

## SETTLEMENT AGREEMENT

### I. PARTIES

This Settlement Agreement ("Settlement Agreement") is entered into by and between (i) the United States of America, acting through the United States Attorney's Office for the Eastern District of California, and the United States Department of Interior, Bureau of Reclamation (collectively, the "United States"), and (ii) Panoche Water District ("PWD" and, together with the United States, the "Parties").

### II. RECITALS

As a preamble to this Settlement Agreement, the Parties agree to the following:

A.      PWD is a California special district established in 1953 with statutory authority pursuant to California Water District Law (Water Code Sections 34000-38500) to provide water services to users spanning over 38,000 acres in the Central Valley of California. PWD is a multi-county district located on the west side of the San Joaquin Valley, spanning portions of Merced and Fresno Counties.

B.      The United States Bureau of Reclamation ("USBR") is an agency within the Department of Interior of the United States responsible for development and management of the certain water resources, including the Delta-Mendota Canal and the San Luis Canal, also known as the California Aqueduct, facilities of the Central Valley Project.

C.      The USBR is authorized to contract with and has entered into contracts with PWD for the provision of water service from the Central Valley Project for irrigation and municipal and industrial purposes and more specifically, from the Delta-Mendota Canal and the San Luis Canal.

D.      The United States contends that it has certain civil claims against PWD under the False Claims Act, 31 U.S.C. §§ 3729, *et seq.*, and other laws arising from PWD's unauthorized

diversion of water from the Delta Mendota Canal and the San Luis Canal between 2009 and 2015. Specifically, the United States contends that between on or about January 1, 2009 and April 30, 2015, PWD diverted approximately 53,000 acre/feet of federally-owned water from the Delta Mendota and San Luis Canals. The United States contends that the diversions were unauthorized and that PWD did not compensate USBR for the diversions. The conduct described in this Paragraph constitutes and is referred to herein as the Covered Conduct.

      E.      This Settlement Agreement is not an admission of liability by PWD or anyone else nor a concession by the United States that its claims are not well-founded.

To avoid the delay, uncertainty, inconvenience, and expense of protracted litigation concerning the Covered Conduct, and in consideration of the mutual promises and obligations of this agreement, the Parties agree and covenant as follows:

### III. TERMS AND CONDITIONS

      1.      PWD shall pay the United States the total sum of seven million four hundred sixty two thousand eight hundred eight dollars ($7,462,808) (the "Settlement Amount"). The Settlement Amount is to be discharged pursuant to the following subparagraphs.

      a)      Excepting the payment described in Paragraph 4 of this Settlement Agreement, PWD shall pay the amounts set forth in this Settlement Agreement by electronic funds transfer pursuant to written instructions to be provided by the United States Attorney's Office for the Eastern District of California.

      b)      PWD shall pay $1,000,000 (the "Initial Payment") of the Settlement Amount to the United States no later than 20 business days after the Effective Date of this Settlement Agreement.

      c)      Interest shall accrue on the remaining portion of the Settlement Amount at

the rate of 1% simple interest per annum. Interest shall begin to accrue starting January 15, 2021.

d)      PWD intends to pursue financing or other funding sources to enable PWD to pay the remainder of the Settlement Amount not paid through the Initial Payment, plus interest accrued up to the date of payment as set forth in Subparagraph (c) (the "Payoff Amount"), in one lump sum during calendar year 2021 (the "Lump Sum Payment"). PWD is entitled to prepay the Settlement Amount including interest accumulated to the payment date early at any time without penalty.

e)      In the event that PWD does not obtain approval of the Proposition 218 Benefit Assessment by landowners or does not issue the Bonds, as described in Subparagraph (d) and Paragraph 9, such that PWD does not pay the Payoff Amount by December 31, 2021, PWD shall pay the remainder of the Settlement Amount plus interest under Subparagraph (c) pursuant to the Payment Schedule set forth on Exhibit A hereto (the "Remaining Payments").

f)      Additionally, in the event that PWD does not make the Lump Sum Payment under Subparagraphs (d) and Paragraph 9 and is instead paying the remaining Settlement Amount and interest pursuant to Subparagraph (e), PWD shall be entitled, at its discretion, to defer all or part of a given Total Payment Amount shown on the Payment Schedule (column 4) for a given Payment Due Date (column 1), if, for the contract year (defined as March 1 of a year to the end of February of the next year) that includes the Payment Due Date, PWD's Central Valley Project allocation is less than 30% of its 94,000 acre feet allocation. PWD shall make its deferral decision at least 21 days prior to the Payment Due Date and shall timely pay any amount of the Total Payment Amount it elects not to defer.

The first postponed payment shall be due on August 15, 2026. The second postponed payment shall be due on August 15, 2027. PWD shall be permitted to defer all or a portion of a Total Payment Amount only twice over the course of paying the amounts due under this Settlement Agreement. Until paid, interest pursuant to Subparagraph (c) shall continue to accrue on any amounts for which PWD defers payment under this Subparagraph.

2.     Subject to the exceptions in Paragraph 3 (concerning excluded claims) below, subject to Paragraphs 11 and 12 below, and conditioned upon PWD's timely payment of the amounts described in Paragraph 1 of this Settlement Agreement, the United States releases PWD, together with its current and former direct and indirect parent corporations, current or former direct and indirect subsidiaries or affiliates, current or former brother or sister corporations, divisions, current or former direct and indirect corporate owners, other districts for whom PWD has performed or does perform services, and the corporate successors and assigns of any of them, from any civil or administrative monetary claim the United States—and no other party— has for the Covered Conduct, arising under the False Claims Act, 31 U.S.C. §§ 3729, et seq.; the Program Fraud Civil Remedies Act, 31 U.S.C. §§ 3801, et seq.; the Injunctions Against Fraud Act, 18 U.S.C. § 1345; 18 U.S.C. Section 1956; common law theories of conversion, negligence, gross negligence, payment by mistake, unjust enrichment, money had and received, breach of fiduciary duty, breach of contract, misrepresentation, deceit, fraud, civil conspiracy, and aiding and abetting any of the foregoing; or any other statutory or common law cause of action for civil damages or civil penalties that the Civil Division of the United States Department of Justice has actual and present authority to assert and compromise pursuant to 28 C.F.R. Part O, Subpart I, .45(d) in connection with the Covered Conduct. For purposes of this paragraph, "affiliates" includes Panoche Drainage District and any other public agency managed by PWD or whose Board of

Directors contains Directors or designated representatives of PWD, including any joint powers
authority established under California law of which PWD is a member.

3.     Notwithstanding the release given in Paragraph 2 of this Settlement Agreement, or
any other term of this Settlement Agreement, the following claims of the United States are
specifically reserved and are not released:

a)     Any civil, criminal, or administrative liability arising under Title 26, United
States Code (Internal Revenue Code);

b)     Any criminal liability;

c)     Any liability of any individual;

d)     Any claim by the United States (or its agencies) not arising out of or related
to the Covered Conduct;

e)     Except as explicitly stated in this Settlement Agreement, any administrative
liability, including the suspension and debarment rights of any federal agency; and

f)     Any liability based upon obligations created by this Settlement Agreement.

4.     In addition to the payments described in Paragraph 1 of this Settlement Agreement,
USBR has calculated, and PWD will not dispute, that the San Luis Delta-Mendota Water Authority
("Water Authority") sustained damages of $798,653 as a result of the Covered Conduct. PWD
agrees to make reasonable efforts to negotiate and resolve the final amount to be paid by PWD to
the Water Authority and, in return, to obtain releases from the Water Authority for the benefit of
both PWD and the United States relating to the Covered Conduct. In the event that a written
settlement agreement cannot be executed between PWD and SLDMWA, PWD will begin to pay
the sum of $798,653 to the Water Authority in four equal annual installments beginning August 31,
2022 and ending August 31, 2025. PWD reserves all right to claim an offset of these monies

against any claim by the Water Authority.

5.      PWD waives and shall not assert any defenses PWD may have to any criminal prosecution or administrative action relating to the Covered Conduct that may be based in whole or in part on a contention that, under the Double Jeopardy Clause in the Fifth Amendment of the Constitution, or under the Excessive Fines Clause in the Eighth Amendment of the Constitution, this Settlement Agreement bars a remedy sought in such criminal prosecution or administrative action.

6.      **Continued Maintenance of Certain Programs, Policies and Procedures**: As further consideration for this Settlement Agreement and up through the end of the calendar year of 2025, PWD agrees as follows:

a)      **Compliance Program**: PWD will continue to maintain a compliance program.

b)      **Code of Conduct**: PWD will continue to maintain a written Code of Conduct for all of its employees and board members. PWD shall endeavor to provide a copy of the Code of Conduct to new employees and new board members within thirty (30) calendar days of an employee's hire or a board member commencing service.

c)      **Training**:  Within one hundred eighty (180) calendar days after the Effective Date of this Settlement Agreement, PWD shall provide at least two (2) hours of training to its existing employees and its existing board members concerning the written compliance program and the Code of Conduct. For new employees or new board members, PWD will also provide at least two (2) hours of training to new PWD employees at a date after hire or new PWD board members at a date after commencement of service. The training shall be provided by a person knowledgeable about the written compliance program and the written Code of Conduct. PWD shall maintain a

record concerning the individuals who receive the required training. The record shall specify the type of training received and the date received. PWD may provide the training required in this Settlement Agreement using in-person methods, appropriate computer-based training approaches, or other means, i.e., Zoom or other similar type systems.

      d)     **Review Procedures**

      (1)     **Engagement of Reviewer**: Within one hundred eighty (180) days after the Effective Date of this Settlement Agreement, PWD shall identify to USBR an entity or person, such as an accounting or auditing firm or non-district personnel to perform the reviews referenced in this paragraph, which entity or person USBR shall reasonably and timely approve or disapprove. If disapproved, PWD shall identify a replacement, again subject to USBR's reasonable and timely approval. The reviews shall be performed on an annual basis for each year beginning for the year ending December 31, 2021 and continuing until the year ending December 31, 2025. The reviewer shall endeavor to complete the review and preparation of the report after each calendar year end by April 30th of the following year.

      (2)     **Type of Review**: The reviewer shall review the PWD's training records and other relevant records to ensure PWD's compliance with the provisions of Paragraphs 6.a., 6.b. and 6.c. above. The reviewer shall prepare a brief report concerning the results of the review. The report shall be provided to PWD's Board of Directors and its General Manager (or person with similar function) and the person within the United States Attorney's Office, Eastern District of California or Bureau of Reclamation as they may designate.

      (3)     **Curative Period**: If the reviewer determines that any portion of

Paragraphs 6.a., 6.b. and 6.c. have not been complied with by PWD, PWD shall have the opportunity to cure any such non-compliance within ninety (90) calendars days of PWD's actual receipt of the report referenced in Paragraph 6.d. above. All dates otherwise to comply in Paragraphs 6.a, 6.b. and 6.c. shall be adjusted to permit PWD to correct any non-compliance during that ninety (90) calendar day period. If PWD corrects any non-compliance during that ninety (90) day period, PWD will be deemed to have complied with the provisions of Paragraphs 6.a., 6.b. and 6.c., even if an earlier time period was otherwise required under said paragraphs. The curative period referenced herein extends the time period for compliance with the provisions of Paragraphs 6.a, 6.b. and 6.c.

e)     **Payment for Non-Compliance**. PWD agrees that if it does not comply with the provisions of Paragraphs 6.a, 6.b, 6. c and 6.d each calendar year beginning with the year 2021 and ending with the calendar year 2025 and after any notice and opportunity to cure has expired as provided in Paragraph 6, then PWD shall pay to the United States the sum of $100,000 for each calendar year in which the non-compliance occurs, up to a maximum sum of $500,000. The $100,000 payment shall be due within thirty (30) calendar days of the expiration of the curative period set forth in Paragraph 6, including Subparagraph 6.d.3.

7.     As further consideration for this Settlement Agreement, and subject to Paragraphs 11 and 12 below, and conditioned upon PWD's timely payment of the amounts described in Paragraph 1 hereof, USBR will not seek exclusion, debarment, or suspension on account of the Covered Conduct. As further consideration for this Settlement Agreement, and subject to Paragraphs 11 and 12 below, and conditioned upon PWD's timely payment of the amounts

described in Paragraph 1 hereof, the Covered Conduct does not and will not preclude PWD from receiving the benefits of its current or a renewed Interim Renewal Water Service Contracts and repayment contract (Contract No. 14-06-200-7864A-IR1-P), converting its existing water service contract into a repayment contract pursuant to the terms of the Water Infrastructure Improvements for the Nation Act (Public Law 114-322, 130 Stat. 1628), entering into other mutually acceptable forms of agreements, including Warren Act contracts and programs such as refuge exchanges, with USBR, for conveyance, transfer or exchanges of water or from seeking to enter into agreements relating to the provision of drainage service under the San Luis Act. Further, the Covered Conduct does not and will not preclude PWD and/or Panoche Drainage District from applying for or participating solely, or in conjunction with other entities, in any grants, assistance agreements and/or cooperative agreements which may be awarded to PWD and/or Panoche Drainage District or in conjunction with other entities after the Effective Date of this Settlement Agreement.

8.     PWD fully and finally releases the United States, its agencies, officers, agents, employees, and servants, from any claims (including attorney's fees, costs, and expenses of every kind and however denominated) that PWD has asserted, could have asserted, or may assert in the future against the United States, its agencies, officers, agents, employees, and servants, related to the Covered Conduct and the United States' investigation and prosecution thereof. PWD hereby expressly waives all rights it may have by virtue of Section 1542 of the California Civil Code, which provides:

**A GENERAL RELEASE DOES NOT EXTEND TO CLAIMS THAT THE CREDITOR OR RELEASING PARTY DOES NOT KNOW OR SUSPECT TO EXIST IN HIS OR HER FAVOR AT THE TIME OF EXECUTING THE RELEASE AND THAT, IF KNOWN BY HIM OR HER, WOULD HAVE MATERIALLY AFFECTED HIS OR HER SETTLEMENT WITH THE DEBTOR OR RELEASED PARTY.**

9.     PWD shall seek, obtain and defend any approvals required under California law to

execute the Settlement Agreement and shall continue to perform any and all terms of the Settlement

Agreement unless and until a court of competent jurisdiction voids any term of the Settlement

Agreement. In the event a court of competent jurisdiction voids any term, PWD and the United

States will meet and confer about whether or not the Parties agree to continue with the remainder of

the Settlement Agreement not voided. If the Parties all agree to continue with the remainder of the

Settlement Agreement, PWD will continue to perform the remainder of the Settlement Agreement.

In addition, as soon as possible after the Effective Date of this Settlement Agreement, PWD shall

use commercially reasonable efforts to submit for a vote of the landowners a land-based assessment

(the "Proposition 218 Benefit Assessment") by May 1, 2021 that would be used as a source of

revenue to secure bonds, notes or other obligations ("Bonds") that would allow for the Lump Sum

Payment. In the event that the Proposition 218 Benefit Assessment pursuant to Articles XIIIC and D

of the California Constitution is approved by the landowners, PWD will use commercially

reasonable efforts to cause the Bonds to be issued within 90 days of the date of such approval;

provided however that failure to issue the Bonds by such date shall not constitute an event of

default hereunder if such Bonds are issued and the Settlement Amount is paid by December 31,

2021 or otherwise as provided for in this Settlement Agreement.

10.    **Unallowable Costs**

a)    Unallowable Costs Defined: All costs (as defined in the Federal

Acquisition Regulation, 48 C.F.R. § 31.205-47) incurred by or on behalf of PWD in connection

with:

(1)    the matters covered by this Settlement Agreement;

(2)    the United States' investigation of the matters covered by this

Settlement Agreement;

PWD Settlement Agreement - Page **10** of **23**

(3)     PWD's investigation, defense, and corrective actions undertaken in response to the United States' investigation in connection with the matters covered by this Settlement Agreement (including attorney's fees);

(4)     the negotiation and performance of this Settlement Agreement; and

(5)     the payments PWD makes pursuant to this Settlement Agreement, are unallowable costs for government contracting purposes (hereinafter referred to as Unallowable Costs).

b)     Future Treatment of Unallowable Costs: Unallowable Costs will be separately determined and accounted for by PWD, and PWD shall not charge such Unallowable Costs directly or indirectly to any contract with the United States.

c)     Treatment of Unallowable Costs Previously Submitted for Payment: Within 90 days of the Effective Date of this Settlement Agreement, PWD shall identify and repay by adjustment to future claims for payment or otherwise any Unallowable Costs included in payments previously sought by PWD or any of its parents, subsidiaries or affiliates from the United States. PWD agrees that the United States, at a minimum, shall be entitled to recoup from PWD any overpayment plus applicable interest and penalties as a result of the inclusion of such Unallowable Costs on previously-submitted requests for payment.  The United States, including the Department of Justice and/or the affected agencies, reserves its rights to audit, examine, or re-examine PWD's books and records and to disagree with any calculations submitted by PWD or any of its subsidiaries or affiliates regarding any Unallowable Costs included in payments previously sought by PWD, or the effect of any such Unallowable Costs on the amount of such payments.

11.     **Event of Default**

a)      In the event that PWD fails to timely make any payment described in Paragraph 1 hereof, and subject to Paragraph 1(f) and Paragraph 9 of this Settlement Agreement, PWD shall be in Default of PWD's payment obligations ("Default"). The United States will provide a written Notice of Default, and PWD shall have an opportunity to cure such Default within thirty (30) calendar days from the date of receipt of the Notice of Default by making the payment due under the payment schedule and paying any additional interest accruing under the Settlement Agreement up to the date of payment. Notice of Default will be delivered to PWD, or to such other representative as PWD shall designate in advance in writing. If PWD fails to cure the Default within thirty (30) calendar days of receiving the Notice of Default and in the absence of an agreement with the United States to a modified payment schedule ("Uncured Default"), the remaining unpaid balance of the Settlement Amount shall become immediately due and payable, and interest on the remaining unpaid balance shall thereafter accrue at the rate of 12% per annum, compounded daily from the date of Default, on the remaining unpaid total (principal and interest balance).

b)      In the event of Uncured Default, the United States shall be authorized to file the consent judgment attached hereto as Exhibit B, and PWD agrees that the United States, at its sole discretion, may (i) retain any payments previously made, rescind this Agreement and pursue a civil action against PWD, or bring any civil and/or administrative claim, action, or proceeding against PWD for the claims that would otherwise be covered by the releases provided in Paragraphs 2 and 7 above, with any recovery reduced by the amount of any payments previously made by PWD to the United States under this Agreement; (ii) take any action to enforce this Agreement in a new action; (iii) offset the remaining unpaid balance from any amounts due and owing to PWD by any department, agency, or agent of the United States at the

time of Default or subsequently; and (iv) exercise any other right granted by law, or under the

terms of this Agreement, or recognizable at common law or in equity. The United States shall be

entitled to any other rights granted by law or in equity by reason of Default, including referral of

this matter for private collection. In the event the United States pursues a collection action, PWD

agrees immediately to pay the United States the greater of (i) a ten-percent (10%) surcharge of

the amount collected, as allowed by 28 U.S.C. § 3011(a), or (ii) the United States' reasonable

attorneys' fees and expenses incurred in such an action. In the event that the United States opts to

rescind this Agreement pursuant to this paragraph, PWD waives and agrees not to plead, argue,

or otherwise raise any defenses of statute of limitations, laches, estoppel or similar theories, to

any civil or administrative claims that are (i) filed by the United States against PWD within 120

days of written notification that this Agreement has been rescinded, and (ii) relate to the Covered

Conduct, except to the extent these defenses were available on the Effective Date.

   12. In exchange for valuable consideration provided in this Settlement Agreement,

PWD acknowledges the following:

    a) PWD believes, based on its current financial projections, that the

reasonable value of its assets will exceed its liabilities following payment to the United States of

the amounts set forth in Paragraph 1 of this Settlement Agreement.

    b) In evaluating whether to execute this Agreement, the Parties intend that

the mutual promises, covenants, and obligations set forth herein constitute a contemporaneous

exchange for new value given to PWD, within the meaning of 11 U.S.C. § 547(c)(1), and the

Parties conclude that these mutual promises, covenants, and obligations do, in fact, constitute

such a contemporaneous exchange.

    c) The mutual promises, covenants, and obligations set forth herein are

intended by the Parties to, and do in fact, constitute a reasonably equivalent exchange of value.

        d)      The Parties do not intend to hinder, delay, or defraud any entity to which PWD was or became indebted to on or after the date of any transfer contemplated in this Agreement, within the meaning of 11 U.S.C. § 548(a)(1).

        e)      If PWD's obligations under this Agreement are avoided for any reason (including but not limited to, through the exercise of a trustee's avoidance powers under the Bankruptcy Code) or if, before the Settlement Amount is paid in full, PWD or a third party commences a case, proceeding, or other action under any law relating to bankruptcy, insolvency, reorganization, or relief of debtors seeking any order for relief of PWD's debts, or to adjudicate PWD as bankrupt or insolvent; or seeking appointment of a receiver, trustee, custodian, or other similar official for PWD or for all or any substantial part of PWD's assets:

                (1)      the United States may rescind the releases in this Agreement and bring any civil and/or administrative claim, action, or proceeding against PWD for the claims that would otherwise be covered by the releases provided in Paragraphs 2 and 7 above;

                (2)      the United States has an undisputed, noncontingent, and liquidated allowed claim against PWD at least equal to any portion of the Settlement Amount plus interest accrued that remains unpaid, with the United States reserving all rights to claim additional amounts; and

        f)      PWD agrees that any civil and/or administrative claim, action, or proceeding brought by the United States under Paragraph 12.e is not subject to an "automatic stay" pursuant to 11 U.S.C. §§ 362(a) and 922 because it would be an exercise of the United States' police and regulatory power. PWD shall not argue or otherwise contend that the United States' claim, action, or proceeding is subject to an automatic stay and, to the extent necessary,

consents to relief from the automatic stay for cause under 11 U.S.C. § 362(d)(1) and 922(b). PWD waives and shall not plead, argue, or otherwise raise any defenses under the theories of statute of limitations, laches, estoppel, or similar theories, to any such civil or administrative claim, action, or proceeding brought by the United States within 120 days of written notification to PWD that the releases have been rescinded pursuant to this paragraph, except to the extent such defenses were available on the Effective Date.

13.     Each of the Parties warrants and represents that it freely and voluntarily enters into this Agreement without any degree of duress or compulsion whatsoever, after having been apprised of all relevant information and data by its legal counsel. Each of the Parties further warrants and represents that no other Party or its representative has made any promise, representation or warranty, express or implied, except as expressly set forth in this Settlement Agreement, and that no Party has relied on any inducements, promises, or representations made by any Party to this Settlement Agreement, or its representatives, or any other person, except as expressly set forth herein.

14.     Each Party agrees that, as consideration for the United States not filing, or asserting claims in, a civil action against PWD or Panoche Drainage District in a civil action on or before January 15, 2021, the period of time between and including December 6, 2017 and December 31, 2021, unless ended earlier as set forth below, shall be excluded when determining whether any civil or administrative claims under the False Claims Act, 31, U.S.C. Sections 3729 *et seq.* are time-barred by statute of limitations, laches, or any other time-related defenses; provided, however, that no such action concerning the Covered Conduct or matters released herein shall be filed except as may be permitted under this Settlement Agreement. Upon payment of the Settlement Amount, this exclusion will expire on the date of payment of the Settlement

Amount if earlier than December 31, 2021. In the event that this Settlement Agreement is voided in whole or in part for any reason, this Paragraph shall remain in full force and effect.

15.   Each Party to this Settlement Agreement shall bear its own costs, attorneys' fees, and other expenses incurred in any manner in connection with the investigation, litigation, and resolution of this matter, including the preparation and performance of this Settlement Agreement.

16.   Except as provided in Paragraph 4, this Settlement Agreement is intended to be for the sole benefit of the Parties only. The Parties do not release any Claims against any other person or entity not expressly released by this Settlement Agreement.

17.   Each individual signing this Settlement Agreement on behalf of PWD represents and warrants that he or she has the power, consent, and authorization of PWD to execute this Settlement Agreement.

18.   The individuals signing on behalf of the USAO and USBR represent that they are signing this Settlement Agreement in their official capacities and that they are authorized to execute this Settlement Agreement.

19.   Each Party represents and warrants that it has not transferred any claim being released under this Settlement Agreement, and is not aware of any such transfer, and that the Party is not aware of any prohibition of any type that prevents the Party from performing the terms of this Settlement Agreement.

20.   Each Party warrants that it has been represented by, and has sought and obtained the advice of, independent legal counsel with regard to the nature, purpose, and effect of this Settlement Agreement. The Settlement Agreement was negotiated by the Parties and their respective counsel, each of whom had the opportunity to participate in the drafting thereof. The

Parties hereby declare that the terms of this Settlement Agreement have been completely read, fully understood, and voluntarily accepted following opportunity for review by legal counsel of their choice.

21.     For purposes of construction, this Settlement Agreement shall be deemed to have been drafted by all Parties and shall not, therefore, be construed against any Party for that reason in any dispute.

22.     The Parties consent to the public disclosure of this Settlement Agreement, and of information about this Settlement Agreement. This Paragraph shall supersede any prior agreement of the parties relating to disclosure of the Settlement Agreement.

23.     This Agreement constitutes the complete agreement between the Parties relating to the Covered Conduct and other provisions herein, and supersedes and replaces all prior negotiations and agreements, whether written or oral, regarding the resolution of the claims between the Parties with respect to the subject matter hereof.

24.     This Settlement Agreement may be executed in counterparts, each of which constitutes an original and all of which taken together shall constitute one valid and binding agreement between the Parties.

25.     This Settlement Agreement may not be altered, amended, or modified, except by a writing duly executed by authorized representatives of all Parties.

26.     This Settlement Agreement is governed by the laws of the United States. The Parties agree that the exclusive jurisdiction and venue for any dispute relating to this Settlement Agreement shall be in the United States District Court for the Eastern District of California.

27.     This Settlement Agreement is effective, final, and binding as of the date of signature of the last signatory to the Settlement Agreement ("Effective Date"). Transmittal and

receipt of facsimiles or PDF versions of signatures shall constitute acceptable, binding signatures for purposes of this Agreement.

28.     The Recitals, including paragraphs A through E, are incorporated herein into the Terms and Conditions.

## THE UNITED STATES

Dated: 1/15/2021

PHILLIP A. TALBERT
First Assistant United States Attorney

By: *Vincente Tennerelli*

VINCENTE A. TENNERELLI
Assistant United States Attorney
Attorneys for the United States

## DEPARTMENT OF INTERIOR, BUREAU OF RECLAMATION

Dated: 1/19/2021        By: _____

ERNEST A. CONANT
Regional Director, Interior Region 10
U.S. Bureau of Reclamation

## PANOCHE WATER DISTRICT

Dated: 01/13/2021       By: _____

JOHN BENNETT
President
Panoche Water District

Approved as to form and content

Dated: 1/13/2021

LAW OFFICES OF WILLIAM C. HAHESY

By: _____

WILLIAM C. HAHESY
Counsel to Panoche Water District

PWD Settlement Agreement - Page 18 of 23

## EXHIBIT A

Settlement Calculation

| | | |
|---|---|---|
| Principal Amount: | $ | 6,462,808 |
| Simple Interest (per annum): | | 1.00% |
| Settlement Date: | | 1/15/2021 |
| Payment #: | | 5 (annually) |
| Payment Start Date: | | 8/31/2021 |

| $6,462,808 @ 1.00% Simple Interest on Unpaid Principal Balance | | | | |
|---|---|---|---|---|
| 1 | 2 | 3 | 4 | 5 |
| Payment Due Date | Principal Amount | Interest Amount | Total Payment Amount | Remaining Principal Amount |
| 1/15/2021 | | | | $  6,462,808 |
| 8/31/2021 | 1,292,562 | 40,547 | 1,333,109 | 5,170,246 |
| 8/31/2022 | 1,292,562 | 51,702 | 1,344,264 | 3,877,685 |
| 8/31/2023 | 1,292,562 | 38,777 | 1,331,338 | 2,585,123 |
| 8/31/2024 | 1,292,562 | 25,851 | 1,318,413 | 1,292,562 |
| 8/31/2025 | 1,292,562 | 12,926 | 1,305,487 | - |
| TOTAL: | $  6,462,808 | $  169,804 | $  6,632,612 | |

**EXHIBIT B**

PHILLIP A. TALBERT
First Assistant United States Attorney
VINCENTE A. TENNERELLI
Assistant United States Attorney
501 I Street, Suite 10-100
Sacramento, CA 95814
Telephone: (916) 554-2700
Facsimile:  (916) 554-2900

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>PANOCHE WATER DISTRICT,<br><br>Defendant. | CASE NO.<br><br>CONSENT JUDGMENT |

The parties to the above action stipulate and consent to the entry of judgment in favor of the United States, Plaintiff, and against Panoche Water District, Defendant, equal to those unpaid portions of the Settlement Amount (as defined in Paragraph 1 of the attached Settlement Agreement (the "Settlement Agreement"), interest accrued thereon at the rate of 1% per annum (as set forth in Paragraph 1(c) of the Settlement Agreement), and interest currently accruing to date of judgment at the rate of 12% per annum (as set forth in Paragraph 11(a) of the Settlement Agreement). Post judgment interest shall accrue at the legal rate pursuant to 28 U.S.C. § 1961(a) and shall be computed daily and compounded annually until the paid in full, but without costs to either party.

In, and only in, the event of an Uncured Default as defined in Paragraph 11(a) of the Settlement Agreement, the United States shall have the right, at its discretion, to file and execute this judgment.

CONSENT JUDGMENT                                                    1

1        The parties consent to the entry of a final judgment in this case by a United States Magistrate

2   Judge. This judgment may be entered upon the application of either party.

3   Dated: January 11, 2021

4                                      PHILLIP A. TALBERT
    First Assistant United States Attorney

5

6   By:   /s/ VINCENTE A. TENNERELLI
          VINCENTE A. TENNERELLI
          Assistant United States Attorney

7

8   ON BEHALF OF THE UNITED
    STATES

9

10

11  Dated: January 13, 2021          WILLIAM C. HAHESY

12

13  By:   /s/
          WILLIAM C. HAHESY

14  ON BEHALF OF PANOCHE WATER
    DISTRICT

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CONSENT JUDGMENT                          2