**EXHIBIT F(1)**
Contract Between the United States and Panoche Water District Providing for
Water Service, Entered into on August 16, 1955, Contract No. 14-06-200-4553.

Contract No.
14-06-200-4553
Approved W.O. 8/19/54

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF RECLAMATION
Central Valley Project, California

CONTRACT BETWEEN THE UNITED STATES AND
PANOCHE WATER DISTRICT PROVIDING
FOR WATER SERVICE

Table of Contents

| Article No. | Title | Page No. |
|---|---|---|
| | Preamble | 1 |
| | Explanatory Recitals | 1-2 |
| 1 | Definitions | 2-3 |
| 2 | Term of Contract | 3 |
| 3 | Water to be Furnished to District | 3-5 |
| 4 | Time for Delivery of Water | 5-6 |
| 5 | Rate and Method of Payment for Water | 6-7 |
| 6 | Adjustments | 7 |
| 7 | Need of District for More Water than Agreed Quantity | 7-8 |
| 8 | Point of Delivery, Maintenance of Flows and Levels, Measurement and Responsibility for Distribution of Water | 8-10 |
| 9 | United States not Liable for Water Shortage | 10-12 |
| 10 | Use of Water Furnished to District | 13 |
| 11 | Agreed Charges a General Obligation of the District -- Taxable Land | 13 |
| 12 | All Benefits Conditioned Upon Payment | 13-14 |
| 13 | Levy of Taxes and Assessments - Fixing of Rates and Tolls | 14 |
| 14 | Refusal of Water in Case of Default | 14-15 |
| 15 | Penalty Upon Delinquency in Payment | 15 |
| 16 | District to Keep Books and Records and Report Crop and Other Data | 15-16 |
| 17 | Inspection of Books and Records | 16 |
| 18 | Changes in Organization of District | 16 |
| 19 | Land Not to Receive Water Furnished to District by United States Until Owners Thereof Execute Certain Contracts | 17-18 |
| 20 | Valuation and Sale of Excess Lands | 18-19 |
| 21 | Excess Lands | 19-22 |
| 22 | Amendment of Federal Reclamation Laws | 22 |
| 23 | Contingent Upon Appropriations or Allotments of Funds | 22 |

| Article No. | Title | Page No. |
|---|---|---|
| 24 | Officials Not to Benefit | 22 |
| 25 | Notices | 23 |
| 26 | Assignment Prohibited:  Successors and Assigns Obligated:  Opinions and Determinations | 23-24 |
| 27 | Water Acquired by District Other than from the United States | 24-25 |
| 28 | Assurance Relating to Validity of Contract | 25-26 |

Sacramento Office
Draft No. 3
5-19-53

Contract No.
14-06-200-4553

UNITED STATES
DEPARTMENT OF THE INTERIOR
BUREAU OF RECLAMATION
Central Valley Project, California

CONTRACT BETWEEN THE UNITED STATES AND
PANOCHE WATER DISTRICT PROVIDING
FOR WATER SERVICE

THIS CONTRACT, made this ___16th___ day of ___August, 1955___,
19___, in pursuance generally of the Act of Congress of June 17, 1902 (32 Stat.
388), and acts amendatory thereof or supplementary thereto, all collectively
herein styled the Federal reclamation laws, between THE UNITED STATES OF
AMERICA, herein styled the United States, and the PANOCHE WATER DISTRICT, a
political subdivision of the State of California, duly organized, existing,
and acting pursuant to the laws thereof, with its principal place of business
at Eagle Field, South Dos Palos, State of California, herein styled the
District:

WITNESSETH, THAT:

EXPLANATORY RECITALS

WHEREAS, the United States is constructing the Central Valley Project
for diversion, storage, carriage, distribution and beneficial use, for flood
control, irrigation, municipal, domestic, industrial, generation and distri-
bution of electric energy, salinity control, navigation and other purposes, of
waters of the Sacramento River, the American River, and the San Joaquin River
and their tributaries; and

WHEREAS, the United States has constructed the Delta-Mendota Canal,
which will be operated and used, in part, for the furnishing of water to the
District pursuant to the terms of this contract; and

WHEREAS, the District desires to contract, pursuant to the Federal reclamation laws and the laws of the State of California, for the furnishing by the United States of a supplemental water supply from the Project for which the District will make payment to the United States upon the basis, at the rates, and pursuant to the conditions hereinafter set forth; and

WHEREAS, investigations of the District lands and present water supply indicate that irrigated and irrigable lands within the boundaries of the District are at present in need of additional water for irrigation and certain areas have a potential need of water for irrigation, and that ground water underlying the District is in need of replenishment in order to eliminate, to the greatest possible extent, the overdraft on the underground water supplies of the lands of the District, and that an additional water supply to meet these present and potential needs can be made available by and through the works constructed and to be constructed by the United States; and

WHEREAS, investigations of the stream flow in the Sacramento River, the American River, and the San Joaquin River and their tributaries indicate that there will be available for furnishing to the District from the Delta-Mendota Canal an additional water supply for surface diversion and direct application for irrigation, and directly or indirectly to replenish depleted ground waters underlying the District;

NOW, THEREFORE, in consideration of the mutual and dependent covenants herein contained, it is hereby mutually agreed by the parties hereto as follows:

DEFINITIONS

1. When used herein, unless otherwise distinctly expressed, or manifestly

2

incompatible with the intent hereof, the term:

(a)  "Secretary" or "contracting officer" shall mean the Secretary of the United States Department of the Interior or his duly authorized representative;

(b)  "Project" shall mean the Central Valley Project, California, of the Bureau of Reclamation;

(c)  "year" shall mean the period from January 1 through December 31, both dates inclusive.

<u>TERM OF CONTRACT</u>

2.  This contract shall become effective upon its execution and shall remain in effect for a period of forty (40) years, commencing with the year following the year in which execution occurs.

<u>WATER TO BE FURNISHED TO DISTRICT</u>

3.  (a)  Each year, for a period of five (5) years, commencing with the year following that in which this contract is executed, the United States will furnish to the District and the District each such year will accept and pay, as provided in Article 5 hereof, for water from the Delta-Mendota Canal in the quantities specified in the schedule submitted by the District in accordance with Article 4(a) for each such year; <u>Provided</u>, That the United States shall not be obligated to furnish more than ninety-four thousand (94,000) acre-feet of water during any such year.

(b)  In the sixth year after January 1 of the year following that in which this contract is executed and each year thereafter during the remainder of the term of this contract, the United States shall furnish to the District and the District shall accept and pay for, as provided in Article 5 hereof,

3

forty thousand (40,000) acre-feet of water, or such greater amount as may be requested in a schedule submitted by the District for said sixth year pursuant to Article 4(a) hereof, but not in excess of sixty-seven thousand (67,000) acre-feet: Provided, That upon the basis of continuing joint studies by the United States and the District and by mutual agreement of the parties hereto, within five (5) years after January 1 of the year following the execution of this contract, said amount of sixty-seven thousand (67,000) acre-feet will be increased to not to exceed ninety-four thousand (94,000) acre-feet: Provided further, That in no event shall said amount of water to be furnished by the United States in the sixth year after January 1 of the year following that in which this contract is executed and accepted and paid for by the District each year thereafter during the remainder of the term of this contract, be more than the amount computed by multiplying 3.4 by the number of irrigable acres in the District eligible to receive water under this contract.

(c) If in any year, after the contracting officer has approved a schedule or any revision thereof submitted by the District, the United States is unable to furnish any of the water in the amounts and at the times requested in the schedule, and the District does not elect to receive and does not receive such water at other times during such year, the District shall be entitled to an adjustment, as provided in Article 6: Provided, That each schedule submitted by the District shall be in accordance with the requirements contained in Article 4 and subdivisions (a) and (b) of this article.

(d) If, within a period of five (5) years after January 1 of the year following that in which this contract is executed, the District does not own, or have available to it for the remainder of the term hereof, facilities

4

which, in the opinion of the contracting officer, are adequate for the convey-
ance and distribution of the water to be made available pursuant to the terms
of this contract, this contract shall terminate: Provided, That if such
facilities are under construction at the end of said five (5) year period, the
contracting officer may, at his option, extend said period from year to year to
permit completion of said facilities. The extension by the contracting officer
of said period shall not affect the obligations of the District provided for in
subdivision (b) of this article.

TIME FOR DELIVERY OF WATER

4. (a) The District shall submit in writing to the contracting officer
on or before January 1 of each year a schedule, subject to the provisions of
Article 3 hereof and satisfactory in form and from an operational standpoint to
the contracting officer, indicating the desired times and quantities for the
delivery of all water pursuant to this contract during such year and the United
States shall within the provisions hereof attempt to deliver said water in
accordance with said schedule, or any revision thereof satisfactory to the
contracting officer in form and from an operational standpoint submitted by
the District within a reasonable time before the desired change of the time for
delivery, as nearly as may be feasible as conclusively determined by the con-
tracting officer.

(b) The District may, with the advance written consent of the con-
tracting officer, in any year exchange water for irrigation purposes with any
other District which has contracted with the United States for water from the
Project. Water furnished to the District pursuant to this contract shall not
be sold or otherwise disposed of for use outside the District without the

5

written consent of the contracting officer.

## RATE AND METHOD OF PAYMENT FOR WATER

5. (a) The contracting officer will, on or before December 15 of each year, by written notice, notify the District of the rate of payment to be made by the District for water to be delivered to it pursuant to this contract during the ensuing year, but in no event shall the rate so announced be in excess of Three Dollars and Fifty Cents ($3.50) per acre-foot.

(b) The District shall make payments to the United States each year as hereinafter provided, at rates fixed as provided in (a) of this article, for the amount of water which the District is required to accept and pay for during such year pursuant to the provisions of Article 3 hereof. The District shall pay one-half (1/2) of the amount payable for said water for the year on or before the commencement of delivery of water for said year, and shall pay the remainder of the amount payable for said water for the year on July 1, or such other later date of the respective year as may be specified by the contracting officer in a written notice to the District: Provided, That at any time during the year that the amount of water furnished to the District hereunder equals the amount for which payment has been made, as herein provided, the District will pay in advance of any further delivery of water for the total amount of water to be furnished to it until the next payment is due.

(c) In the event the District fails or refuses to accept delivery of the quantities of water available for delivery to and required to be accepted by it pursuant to this contract, or in the event the District in any year, during the period described in Article 3(b) hereof, fails to submit a schedule for delivery as provided in Article 4(a) of this contract, said failure or

6

refusal shall not relieve the District of its obligation to pay for said water and the District agrees to make payment therefor in the same manner as if said water had been delivered to and accepted by it in accordance with this contract.

### ADJUSTMENTS

6. The amount of any overpayment by the District by reason of the quantity of water actually available for the District during any year, as conclusively determined by the contracting officer, having been less than the quantity of such water which the District otherwise under the provisions of this contract would have been required to receive and pay for, shall be applied first to any accrued indebtedness arising out of this contract then due and owing to the United States by the District and any amount of such overpayment then remaining shall, at the option of the District, be refunded to the District or credited upon amounts to become due to the United States from the District under the provisions hereof in the ensuing year.

### NEED OF DISTRICT FOR MORE WATER THAN AGREED QUANTITY

7. In the event the District in any year requires an amount of water in addition to the quantity agreed to be accepted by it during such year pursuant to Article 3 hereof, the United States, upon receipt from the District of (1) a written notice requesting such additional water together with a schedule indicating the desired times and quantities for the delivery thereof, and (2) payment in full therefor at the applicable rate for such year, shall attempt to deliver such additional water to the District in accordance with said schedule to the extent that additional water is available for the District, as determined by the contracting officer. The amount of any overpayment by the District, by reason of the additional quantity of water furnished to the

7

District pursuant to this article having been less than the quantity requested and paid for by the District, shall be applied as provided in Article 6 hereof: Provided, That the failure or refusal of the District to accept delivery of such additional amounts of water when it is available shall not entitle the District to any adjustment of payment for said water. The furnishing by the United States and acceptance by the District of such additional amounts of water shall neither entitle nor obligate the District to receive such amounts in subsequent years.

### POINT OF DELIVERY, MAINTENANCE OF FLOWS AND LEVELS, MEASUREMENT AND RESPONSIBILITY FOR DISTRIBUTION OF WATER

8. (a) The water to be furnished to the District pursuant to this contract will be delivered at Delta-Mendota Canal at station 4251+90. By mutual agreement of the parties, additional points of delivery may be constructed at such points and on such terms as may be agreed upon.

(b) The United States shall make all reasonable efforts consistent with the most efficient over-all operation of the Central Valley Project for irrigation purposes to maintain sufficient flows and levels of water in the Delta-Mendota Canal to furnish water to the District at the full designed capacity of the turnouts established as delivery points pursuant to (a) of this article.

(c) All water delivered pursuant to this contract shall be measured by the United States at the point of delivery established pursuant to (a) of this article and with equipment installed, operated, and maintained by the United States. Upon the request of the District, the accuracy of such measurements will be investigated by the contracting officer and any errors

8

appearing therein adjusted.

(d)  The United States shall not be responsible for the control, carriage, handling, use, disposal, or distribution of water which may be furnished at the delivery points established pursuant to (a) of this article, nor for claim of damage of any nature whatsoever, including but not limited to property damage, personal injury or death, arising out of or connected with the control, carriage, handling, use, disposal or distribution of such water beyond such delivery point:  Provided, That the United States reserves the right to all waste, seepage, and return flow water derived from water furnished to the District hereunder and which escapes or is discharged beyond the District's boundaries and nothing herein shall be construed as an abandonment or a relinquishment by the United States of any such water, but this shall not be construed as claiming for the United States any right, as waste, seepage, or return flow, to water being used pursuant to this contract for surface irrigation or underground storage within the District's boundaries by the District or those claiming by, through, or under the District.

(e)  The United States may temporarily discontinue or reduce the amount of water to be furnished to the District as herein provided for the purposes of such investigation, inspection, maintenance, repair, or replacement as may be necessary of any of the Project facilities necessary for the furnishing of water to the District, or any part thereof, but so far as feasible the United States will give the District due notice in advance of such temporary discontinuance or reduction, except in case of emergency, in which case no notice need be given.  In the event of any such discontinuance or reduction, the United States will, upon the resumption of service, approximate, as nearly

9

as may be feasible and in accordance with Article 3(c), the quantity of water which would have been furnished to the District in the absence of such contingency.

UNITED STATES NOT LIABLE FOR WATER SHORTAGE

9. (a) There may occur at times a shortage during any year in the quantity of water available for furnishing to the District by the United States pursuant to this contract through and by means of the Project, and in no event shall any liability accrue against the United States or any of its officers, agents, or employees for any damage, direct or indirect, arising from a shortage on account of errors in operation, drought, or unavoidable causes. In any year in which there may occur a shortage from any cause, the United States reserves the right to apportion the available water supply among the District and others entitled, under existing and future contracts, to receive water from Mendota Pool and the Delta-Mendota Canal in accordance with conclusive determination of the contracting officer as follows:

(i) A determination shall be made of the total amount of water agreed to be accepted during the respective year under all contracts then in force for the delivery of water from Mendota Pool and the Delta-Mendota Canal, the amount so determined being herein referred to as the contractual commitments.

(ii) A determination shall be made of the total quantity of water at Mendota Pool and from Delta-Mendota Canal which is in excess of the amount necessary to meet the requirements of the contract of July 27, 1939, referred to in (d) of this article and which is available for meeting the contractual commitments,

10

the amount so determined being herein referred to as the
available supply.

(iii)  The total quantity of water agreed to be accepted by
the District during the respective year, under Article 3 hereof,
shall be divided by the contractual commitments, the quotient thus
obtained being herein referred to as the District's contractual
entitlement.

(iv)  The available supply shall be multiplied by the
District's contractual entitlement and the result shall be the
quantity of water required to be delivered by the United States
to the District for the respective year, but in no event shall
such amount exceed the total quantity of water agreed to be
accepted by the District pursuant to Article 3 hereof.

Insofar as determined by the contracting officer to be practicable, the United
States will, in the event a shortage appears probable, notify the District of
such determinations in advance of the irrigation season.

(b)  In the event that in any year there is delivered to the District,
by reason of any shortage or apportionment, as provided in subdivision (a) of
this article, or any discontinuance or reduction of service as set forth in
Article 8(e) hereof, less than the quantity of water which the District other-
wise would be entitled to receive hereunder, there shall be made an adjustment
on account of the amounts paid to the United States by the District for water
for said year, in a manner similar to that provided for in Article 6 hereof.
To the extent of such deficiency, such adjustment shall constitute the sole
remedy of the District or anyone having or claiming to have by, through, or

11

under the District, the right to the use of any of the water supply provided for herein.

(c) The United States assumes no responsibility with respect to the quality of the water to be furnished pursuant to this contract, and the United States does not warrant the quality of any such water: Provided, That the District shall not be obligated to accept and pay for any water which contains in excess of three hundred (300) parts by weight of chloride per one million (1,000,000) parts of water. To the extent that any adjustment is necessary because of the existence of chloride in the water available for furnishing to the District in excess of the amount herein specified, and because of previous payments by the District, such adjustment shall be made in a manner similar to that provided in Article 6. No adjustment shall be made hereunder in relation to any water actually furnished to and used by, through or under the District for any purpose.

(d) The United States shall not be required to furnish any water to the District in any year unless the contracting officer determines that there will be water available from the Delta-Mendota Canal fully to meet the requirements of the Contract for Exchange of Waters dated July 27, 1939, between the United States and the San Joaquin and Kings River Canal and Irrigation Company, Incorporated, and others, and recorded on the 18th day of September, 1939, in the office of the County Recorder of

(i) Fresno County in Book 1810 of Official Records at Page 50;

(ii) Stanislaus County in Book 704 of Official Records at Page 1;

(iii) Merced County in Book 623 of Official Records at Page 417;

(iv) Madera County in Book 247 of Official Records at Page 113.

12

## USE OF WATER FURNISHED TO DISTRICT

10.   The District agrees that water furnished to it by the United States pursuant to this contract will not be delivered or furnished by the District for any purposes other than agricultural purposes, including but not restricted to the watering of stock, or underground water replenishment, without the written consent of the contracting officer.

## AGREED CHARGES A GENERAL OBLIGATION
## OF THE DISTRICT - TAXABLE LAND

11.   The District as a whole is obligated to pay to the United States the charges becoming due as provided in this contract, notwithstanding the individual default in the payment to the District by individual water users of assessments, tolls, or other charges levied by the District.   The lands which may be charged with any taxes or assessments under this contract are hereby designated and described as all the lands in the District.

## ALL BENEFITS CONDITIONED UPON PAYMENT

12.   Should any assessment or assessments required by the terms of this contract and levied by the District against any tract of land or water user in the District be judicially determined to be irregular or void, or should the District or its officers be enjoined or restrained from making or collecting any assessments upon such land or from such water user as provided for herein, then such tract shall have no right to any water furnished to the District pursuant to this contract, and no water made available by the United States pursuant hereto shall be furnished for the benefit of any such lands or water users, except upon the payment by the landowner of his assessment or a toll charge for such water, notwithstanding the existence of any contract between the District and the owner or owners of such tract.   Contracts, if any, between the District and the water users involving water furnished pursuant to this

13

contract shall provide that such use shall be subject to the terms of this contract. It is further agreed that the payment of charges at the rates and upon the terms and conditions provided for herein is a prerequisite to the right to water furnished to the District pursuant to this contract; and no irregularity in levying taxes or assessments by the District, nor lack of authority in the District, whether affecting the validity of District taxes or assessments or not, shall be held to authorize or permit any water user of the District to demand water made available pursuant to this contract, unless charges at the rates and upon the terms and conditions provided for herein have been paid by such water user.

LEVY OF TAXES AND ASSESSMENTS -
FIXING OF RATES AND TOLLS

13. The District will cause to be levied and collected all necessary taxes and assessments, and will use all of the authority and resources of the District to meet its obligations hereunder, to make in full all payments to be made pursuant to this contract on or before the date such payments become due, and to meet its other obligations under this contract. The District may, either or both, require the payment of toll charges or levy assessments for such water or service. All assessments levied by the District to meet the obligations accruing under this contract shall, unless otherwise determined by the Board of Directors of the District, be upon an ad valorem basis.

REFUSAL OF WATER IN CASE OF DEFAULT

14. No water shall be furnished to the District or by the District to or for the use of any lands or parties therein during any period in which the District may be in arrears in the advance payment of charges accruing under

14

this contract.  No water shall be furnished to or by the District pursuant to this contract for lands or parties which are in arrears in the payment to the District of any assessments, rates, tolls, or rental charges of the District levied or éstablished by the District and necessary for the purpose of raising revenues to meet the payment by the District to the United States of the District's obligation under this contract.  The provisions of this article are not exclusive, and action taken pursuant hereto shall not prejudice or preclude the United States from exercising any other remedy to enforce collection of any amounts due hereunder.

PENALTY UPON DELINQUENCY IN PAYMENT

15.  Upon every installment of money required to be paid by the District to the United States pursuant to this contract which shall remain unpaid after the same shall have become due and payable, there shall be imposed a penalty of one-half (1/2) of one (1) percent per month of the amount of such delinquent installment from and after the date when the same becomes due until paid, and the District hereby agrees to pay said penalty:  Provided, That no penalty shall be chargeable against the net amount of any adjustment made pursuant to Article 6 hereof:  Provided further, That no penalty shall be charged to or be paid by the District unless such delinquency continues for more than thirty (30) days.

DISTRICT TO KEEP BOOKS AND RECORDS<br>AND REPORT CROP AND OTHER DATA

16.  The District shall establish and maintain account and other books and records sufficient to enable it to furnish, insofar as the District is permitted to do so by the laws of the State of California, to the Bureau of

15

Reclamation reports and statements to such extent and in such manner and form as may be prescribed by the United States as to information pertaining to (a) accounts and financial transactions of the District, insofar as such information pertains to this contract and operations thereunder, and (b) crops raised and agricultural and livestock products produced on the lands within the District, a report thereon to be furnished to the contracting officer annually on or before December 31.

## INSPECTION OF BOOKS AND RECORDS

17.  Subject to applicable Federal laws and regulations, the proper officers or agents of the District shall have full and free access at all reasonable times to the Project account books and official records of the Bureau of Reclamation, insofar as the same pertain to the matters and things provided for in this contract, with the right at any time during office hours to make copies thereof, and the proper representatives of the United States shall have similar rights in respect to the account books and records of the District.

## CHANGES IN ORGANIZATION OF DISTRICT

18.  (a)  While this contract is in effect, no change will be made in the District either by inclusion or exclusion of lands, by partial or total consolidation or merger with another district, by proceedings to dissolve, or otherwise, except upon the contracting officer's written assent thereto.

(b)  In event lands are annexed to or excluded from the District as provided herein, the parties hereto may by supplemental agreement increase or decrease the quantity of water which is to be furnished by the United States to the District, and which the District is required to receive and pay for pursuant to this contract.

16

### LAND NOT TO RECEIVE WATER FURNISHED TO DISTRICT
### BY UNITED STATES UNTIL OWNERS THEREOF
### EXECUTE CERTAIN CONTRACTS

19.  (a)  No water made available pursuant to this contract shall be furnished to any excess lands as defined in Article 21 hereof unless the owners thereof shall have executed valid recordable contracts in form prescribed by the United States, agreeing to the provisions of Articles 19, 20, and 21 of this contract; agreeing to the appraisal provided for in Article 20 hereof and that such appraisal shall be made on the basis of the actual bona fide value of such lands at the date of the appraisal without reference to the construction of the Project, all as hereinafter provided; and agreeing to the sale of their excess lands under terms and conditions satisfactory to the Secretary and at prices not to exceed those fixed as hereinafter provided.  No sale of any excess lands shall carry the right to receive water made available pursuant to this contract unless and until the purchase price involved in such sale is approved by the contracting officer, and upon proof of fraudulent representation as to the true consideration involved in such sale, the United States may instruct the District by written notice to refuse to furnish any water subject to this contract to the land involved in such fraudulent sales, and the District thereafter shall not furnish said water to such lands.

(b)  If Project water furnished to the District pursuant to this contract reaches the underground strata of excess land owned by a large land owner who has not executed a recordable contract and the large land owner pumps such Project water from the underground, the District will not be deemed to have furnished such water to said lands within the meaning of this contract

17

if such water reached the underground strata of the aforesaid excess land as an unavoidable result of the furnishing of Project water by the District to non-excess lands or to excess lands with respect to which a recordable contract has been executed.

## VALUATION AND SALE OF EXCESS LANDS

20.  (a)  The value of the excess irrigable lands within the District, held in private ownership of large land owners as defined in the next succeeding article hereof, for the purposes of this contract, shall be appraised in a manner to be prescribed by the Secretary of the Interior.  At the option of a large land owner, however, the value of such land may be appraised, subject to the approval thereof by the Secretary, by three appraisers.  One of said appraisers shall be designated by the Secretary and one shall be designated by the District, and the two apprasiers so appointed shall name the third.  If the appraisers so designated by the Secretary and the District are unable to agree upon the appointment of the third, the presiding justice of the Third District Court of Appeal of the State of California shall be requested to designate the third appraiser.

(b)  The following principles shall govern the appraisal:

(i)  No value shall be given such lands on account of the existing or prospective possibility of securing water from the Project.

(ii)  The value of improvements on the land at the time of said appraisal shall be included therein, but shall also be set forth separately in such appraisal.

(c)  The cost of the first two appraisals and each subsequent

18

appraisal requested by the United States shall be paid by the United States.

(d)  Any improvements made or placed on the appraised land after the appraisal hereinabove provided for prior to sale of the land by a large land owner may be appraised in like manner.

(e)  Excess irrigable lands sold by large land owners within the District shall not carry the right to receive water made available pursuant to this contract for such lands, and the District agrees to refuse to furnish such water to lands so sold until, in addition to compliance with the other provisions hereof, a verified statement showing the sale price upon any such sale shall have been filed with the District.

(f)  The District agrees to take all reasonable steps requested by the contracting officer to ascertain the occurrence and conditions of all sales of irrigable land of large land owners in the District, and to inform the United States concerning the same.

(g)  A true copy of this contract and of each appraisal made pursuant thereto shall be maintained on file in the office of the District and like copies in such principal offices of the Bureau of Reclamation as may be established hereafter in connection with the Project, and shall be made available for examination during the usual office hours by all persons who may be interested therein.

<u>EXCESS LANDS</u>

21.  (a)  As used herein the term "excess land" means that part of the irrigable land within the District in excess of one hundred and sixty (160) acres held in the beneficial ownership of any single person, or in excess of three hundred and twenty (320) acres held in the beneficial ownership of

19

husband and wife jointly, as tenants in common or by the entirety, or as community property; the term "excess land" shall not include land owned by the District; the term "large land owner" means an owner of excess lands, and the term "nonexcess land" means all irrigable land within the District which is not excess land as defined herein.

(b)  Each large land owner as a further condition precedent  to the right to receive water or service made available pursuant to this contract for any of his excess land shall:

(i)  Before any water is furnished by the District to his . excess land, execute a valid recordable contract in form prescribed by the United States, agreeing to the provisions herein contained in Articles 19, 20, and 21, and agreeing to dispose of his excess land in accordance therewith to persons who can take title thereto as nonexcess land as herein provided and at a price not to exceed the approved, appraised value of such excess land and within a period of ten (10) years after the date of the execution of said recordable contract, and agreeing further that if said land is not so disposed of within said period of ten (10) years, the Secretary shall have the power to dispose of said land at the appraised value thereof fixed as provided herein, or such lower price as may be approved by the owner of such land, subject to the same conditions on behalf of such large land owner; and the District agrees that it will refuse to furnish said water or service to any large land owner other than for his nonexcess land until such owner

20

meets the conditions precedent herein stated;

(ii)  Within thirty (30) days after the date of notice
from the United States requesting such large land owner to
designate his irrigable lands under the Project which he
desires to designate as nonexcess land, file in the office
of the District, in duplicate, one copy thereof to be furnished
by the District to the Bureau of Reclamation, his written
designation and description of lands so selected to be
nonexcess land, and upon failure to do so the District shall
make such designation and mail a notice thereof to such large
land owner, and in the event the District fails to act within
such period of time as the contracting officer considers
reasonable, such designation will be made by the contracting
officer, who will mail a notice thereof to the District and
the large land owner.  The large land owner shall become
bound by any such action on the part of the District or the
contracting officer, and the District will furnish said water
and service only to the land so  designated to be nonexcess
land.  A large land owner may, with the consent of the con-
tracting officer, designate land other than that previously
designated as nonexcess land:  Provided, That an equal acreage
of the land previously designated as nonexcess shall, upon
such new designation, become excess land thereafter subject to
the provisions of Articles 19, 20, and 21 of this contract, and
shall be described in an amendment of such recordable contract,

21

as may have been executed by the large land owner, in the same
manner as if such land had been excess land at the time of
the original designation.

### AMENDMENT OF FEDERAL RECLAMATION LAWS

22.   In the event that the Congress of the United States repeals the
so-called excess-land provisions of the Federal reclamation laws, Articles 19,
20, and 21 of this contract will no longer be of any force or effect, and, in
the event that the Congress amends the excess-land provisions or other pro-
visions of the Federal reclamation laws, the United States agrees, at the
option of the District, to negotiate amendments of appropriate articles of this
contract, all consistently with the provisions of such repeal or amendment.

### CONTINGENT UPON APPROPRIATIONS OR ALLOTMENTS OF FUNDS

23.   The expenditure of any money or the performance of any work by the
United States herein provided for which may require appropriations of money by
the Congress or the allotment of funds, shall be contingent upon such
appropriations or allotments being made.   The failure of the Congress so to
appropriate funds or the failure of an allotment of funds shall not relieve the
District from any obligations then accrued under this contract, and no
liability shall accrue to the United States in case such funds are not
appropriated or allotted.

### OFFICIALS NOT TO BENEFIT

24.   No Member of or Delegate to Congress or Resident Commissioner shall
be admitted to any share or part of this contract or to any benefit that may
arise herefrom, but this restriction shall not be construed to extend to this
contract if made with a corporation or company for its general benefit.

## NOTICES

25.  Any notice or announcement which the provisions hereof contemplate shall be given to one of the parties hereto by the other shall be deemed to have been given if deposited in the United States Post Office, on the part of the United States in a franked envelope addressed to the District at its office, and on the part of the District in a postage prepaid envelope addressed to the Bureau of Reclamation, Department of the Interior, Sacramento, California, or such other address as from time to time may be designated by the contracting officer in a written notice to the District: Provided, however, That this article shall not preclude the effective service of any such notice or announcement by other means.

## ASSIGNMENT PROHIBITED:  SUCCESSORS AND ASSIGNS OBLIGATED:  DEFAULT: OPINIONS AND DETERMINATIONS

26.  (a)  The provisions of this agreement shall apply to and bind the successors and assigns of the respective parties, but no assignment or transfer of this contract or any part thereof or interest therein shall be valid until and unless approved by the United States.  Any waiver at any time by either party to this contract of its rights with respect to a default, or any other matter arising in connection with this contract, shall not be deemed to be a waiver with respect to any subsequent default or matter.  All rights of action for breach of this contract are reserved to the United States as provided in Section 3737 of the Revised Statutes of the United States, as amended (41 U.S.C. 15).

(b)  Where the terms of this contract provide for action to be based upon the opinion or determination of either party to this contract, said terms

23

shall not be construed as permitting such action to be predicated upon
arbitrary, capricious, or unreasonable opinions or determinations.

<u>WATER ACQUIRED BY DISTRICT OTHER THAN FROM
THE UNITED STATES</u>

27. (a) The provisions of this contract shall not be applicable to or
affect water or water rights now owned or hereafter acquired by the District or
landowners within the District other than from the United States. Water fur-
nished pursuant to the terms of this contract may be transported by means of
the same distribution works as water now available, or which may become avail-
able, to the District or landowners within the District other than pursuant to
the terms of this contract if the contracting officer determines (a) that such
mingling is necessary to avoid a duplication of facilities and (b) that no
excess land receives a benefit by reason of an improvement in the quality of
the water: <u>Provided</u>, That in no event may the contracting officer determine
that there is a benefit to excess land by reason of an improvement in the
quality of water if the productivity of said excess land is not tangibly
improved thereby. Notwithstanding such mingling of water, the provisions of
this contract shall be applicable to the quantity of water furnished to the
District pursuant to the terms hereof, and such mingling of water shall not in
any manner subject to the provisions of this contract the quantity of water
acquired by or available to the District or landowners within the District
other than from the United States.

(b) With respect to the distribution works or portions thereof in
which mingling is permitted as provided in (a) hereof, the District:

(i) Will be responsible for the operation and maintenance

24

of separate outlets from the distribution system for nonexcess
and excess lands as defined in Article 21.  At the request of
the contracting officer, the District will be responsible for
the installation, operation, and maintenance of water measuring
equipment at delivery points to excess lands and, further, will
be responsible for the installation, operation, and maintenance
of similar equipment for measuring the water available to the
District or landowners within the District other than from the
Project, and the contracting officer may check and inspect said
equipment at any time.

(ii)  Agrees that the quantity of water furnished to it by
the United States during each 24-hour period will be delivered
by the District only to nonexcess land, through the aforesaid
outlets to nonexcess lands.  The District shall be deemed to be
in breach of Articles 19, 20, 21, and 27 of this contract if at
any time there is furnished to all excess lands not covered by
recordable contract and served by the distribution works or
portions thereof in which mingling is permitted, a quantity of
water which is greater than that which the District or landowners
within the District have introduced into said system from the
supply available other than pursuant to this contract.

### ASSURANCE RELATING TO VALIDITY OF CONTRACT

28.  Promptly after the execution and delivery of this contract the
District shall file and prosecute to a final decree, including any appeal
therefrom to the highest court of the State of California, in a court of

competent jurisdiction, a special proceeding for the judicial examination, approval, and confirmation of the proceedings had for the organization of the District, and the proceedings of the District Board of Directors, and of the District, leading up to and including the making of this contract and the validity of the provisions thereof; and this contract shall not be binding on the United States until said District organization, proceedings, and contract shall have been so confirmed by a court of competent jurisdiction or pending appellate action if ground for appeal be laid.

IN WITNESS WHEREOF, the parties hereto have hereunto affixed their names the day and year hereinabove written.

THE UNITED STATES OF AMERICA

By   /s/ C. H. Spencer
     Regional Director, Region 2
     Bureau of Reclamation

PANOCHE WATER DISTRICT

(SEAL)

By   /s/ J. R. Hammonds
     President

ATTEST:

/s/ F. E. Redfern
Secretary

RESOLUTION AUTHORIZING PRESIDENT AND SECRETARY
TO EXECUTE CONTRACT BETWEEN THE UNITED STATES
AND PANOCHE WATER DISTRICT PROVIDING FOR WATER
SERVICE

WHEREAS, the Board of Directors has approved and does hereby approve and confirm that certain proposed contract with the United States of America entitled: "CONTRACT BETWEEN THE UNITED STATES AND PANOCHE WATER DISTRICT PROVIDING FOR WATER SERVICE," and designated Sacramento Office Draft No. 3, 5/19/53, Approved W. O. 8/19/54, which said proposed contract was approved by the United States of America on August 19, 1954; and

WHEREAS, said contract was approved by the District Securities Commission of the State of California on May 17, 1955, and by the qualified voters within said District at a special election called for said purpose, and held on the 21st day of June, 1955, by a vote of 1,382,244 for, and 0 votes against said proposition.

NOW THEREFORE, BE IT RESOLVED by the Board of Directors of Panoche Water District as follows: That J. R. HAMMONDS, as President, and F. E. REDFERN, as Secretary, be, and they hereby are, authorized, empowered, and directed in the name of the District to execute and deliver the above designated contract with the United States for and on behalf of said District.

I hereby certify that the foregoing is a true and correct copy of a Resolution duly adopted at a special meeting of the Board of Directors of Panoche Water District duly called and held at the office of the District on the 15th day of July, 1955.

(SEAL)                           /s/ F. E. Redfern
                                 Secretary, Panoche Water District