```
                  IN THE UNITED STATES DISTRICT COURT
            FOR THE EASTERN DISTRICT OF CALIFORNIA (FRESNO)


UNITED STATES OF AMERICA,     )    Case No. 1:22-CR-00103-JLT-SKO
                              )
           Plaintiff,         )
                              )    **VIA ZOOM VIDEOCONFERENCE**
      vs.                     )
                              )
DENNIS FALASCHI,              )
                              )
           Defendant.         )    Monday, January 23, 2023
-----------------------------)     10:59 A.M.




            TRANSCRIPT OF MOTION TO SEVER AND MOTION TO DISMISS
            BEFORE THE HONORABLE JENNIFER L. THURSON
                 UNITED STATES MAGISTRATE JUDGE




APPEARANCES ON NEXT PAGE.




Electronic Court Recorder:     Otilia Rosales
                               United States District Court
                               2500 Tulare Street
                               Sixth Floor
                               Fresno, California 93721

Transcription Service By:      Dipti Patel, CET-997
                               Liberty Transcripts
                               7306 Danwood Drive
                               Austin, Texas 78759
                               (847) 848-4907
                               www.libertytranscripts.com




Proceedings recorded by electronic sound recording;
transcript produced by transcription service.
```

2

APPEARANCES VIA ZOOM VIDEOCONFERENCE:

For the Plaintiff:            United States Attorney's Office
                              BY:  JOSEPH BARTON, ESQUIRE
                              2500 Tulare Street, Suite 4401
                              Fresno, California 93721
                              (559) 497-4000


For the Defendant:            Days Law Firm
                              BY:  MARC DAYS, ESQUIRE
                              1107 R Street
                              Fresno, California 93721
                              (559) 708-4844

                              Wanger Jones Helsley PC
                              BY:  OLIVER W. WANGER, ESQUIRE
                              265 East River Park Circle
                              Suite 310
                              P. O. Box 28340
                              Fresno, California 93729
                              (559) 233-4800

                              Law Office of John P. Balazs
                              BY:  JOHN PAUL BALAZS, ESQUIRE
                              916 2nd Street, Suite F
                              Sacramento, California 95814
                              (916) 447-9299

3

1          **Fresno, California, Monday - January 23, 2023, 10:59 a.m.**

2                     **P R O C E E D I N G S**

3                          ---oOo---

4          THE CLERK:  The Court calls United States versus Dennis

5     Falaschi, Case number 1:22-CR-103, scheduled for a motion to

6     sever and a motion to dismiss.

7          THE COURT:  All right.  May I have the appearances

8     beginning with the Government, please.

9          MR. BARTON:  Good morning, Your Honor.  Joe Barton for

10    the Government.

11         THE COURT:  For the defense?

12         MR. DAYS:  Good morning, Your Honor.  Marc Days

13    appearing with Mr. Falaschi who's in my office behind my right

14    shoulder.

15         THE COURT:  All right.  We're on calendar for the

16    motion --

17         MR. DAYS:  Your Honor, also appearing are Oliver Wanger

18    and John Balazs for Mr. Falaschi.

19         THE COURT:  All right.  Thank you.

20         We're on calendar for the motion to sever as well as a

21    motion to dismiss.  I think the motion to sever is an easier

22    issue.  The Government doesn't oppose the severance.  It's my

23    understanding upon review of the indictment that those Counts 3

24    through 5 don't depend on any factual determination made as to

25    Counts 1 and 2.  It appears to me to make sense to sever them.

1          Is there anything else that you wanted to add on that

2    topic, Mr. Days?

3          MR. DAYS:  No, Your Honor.

4          THE COURT:  Mr. Barton, any comments?

5          MR. BARTON:  No, Your Honor.

6          THE COURT:  All right.  That motion is granted.

7          As to the motion to dismiss -- gosh, I'm sorry, this is

8    questions of law so I didn't make the CARES findings, the CARES

9    Act findings, but I can do that.

10         Mr. Barton, do you wish for me to do that?

11         MR. BARTON:  Your Honor, sure, we can adopt the

12   findings or the Government would be okay with adopting the

13   findings that you previously made in the other four cases.

14         THE COURT:  All right.  Mr. Days, I didn't ask this

15   previously.  Obviously, your client is with you in your office.

16   He does have the right to an in-person appearance.  Is he waiving

17   his right to in-person appearance for today's hearing and

18   proceeding by videoconference?

19         MR. DAYS:  Yes, Your Honor.

20         THE COURT:  And, likewise, I have made these findings

21   earlier today.  Do you wish for me to find them -- make these

22   findings again or adopt them?

23         MR. DAYS:  Adoption's fine, Your Honor.

24         THE COURT:  All right.  I will adopt the findings as I

25   previously made, and I will find based thereon that we can

1    proceed by videoconference as provided by the CARES Act and this

2    Court's general orders.

3           As to the motion to dismiss then, Mr. Days, let me just

4    tell you what I'm thinking here.  When I look at your motion, it

5    seems to assume that what has occurred here is seepage as opposed

6    to leakage.  I noticed that you have adopted a particular

7    definition that you found in one dictionary.  I have found just a

8    quick search cases that define seepage and leakage as different.

9           You seem to be using those terms interchangeably.  Do

10   you agree that if there's a different definition for leakage as

11   opposed to seepage that the section you've cited me to in all of

12   the contracts don't really address, don't really support your

13   motion?

14          And as I understand it, the couple of cases I found

15   that were in the insurance context defines seepage as something

16   different than leakage.  Seepage as moisture going through a

17   porous service and leakage being a breach of the service.

18          I noticed you didn't cite any case authority for the

19   suggestion that any loss of water in this case equate to a

20   seepage rather than a leakage, but that's -- what it seems to me

21   that that is a question of law that can be determined.  I don't

22   know if you want me to determine that at this time.  What are

23   your comments in that regard?

24          MR. DAYS:  Well, Your Honor, I believe that the cases

25   that the Court -- well, first I'd point out that the Government

6

1   has made no argument that's juxtaposed by the Court.  They've

2   taken no position, at least in their opposition, on that issue.

3            I believe that the cases that the Court cited, each one

4   of them if I'm not mistaken has a definition set forth in the

5   contract.

6            THE COURT:  Actually, most of them -- there are

7   several, and they seem to all rely upon different dictionaries.

8   The only circuit court case that I found does not -- actually,

9   none of the cases, the three that I looked at, rely upon any

10  language in a contract.

11           And I would also point out it looks like the Government

12  at Page 2 does take exception to the idea that this is a seepage

13  because they say that your client didn't allow water to passively

14  seep through but instead actively took advantage of a leak.

15           So, anyway, let me turn back to you.

16           MR. DAYS:  Well, that seems to be an acknowledgment by

17  the Government that I guess prior to there being a gate put on

18  the -- as alleged in the indictment, prior to there being a new

19  gate placed on a broken date, it would be seepage.  They say that

20  he didn't allow it to passively seep.

21           Our position is that, as set forth in our papers,

22  whether you put a gate on the broken -- you replace the broken

23  gate or not, it doesn't change the fact that the water at issue

24  is seeping from the wall of the DMC into the stand pipe.  And --

25           THE COURT:  Doesn't that mean that an interpretation of

7

1    seepage as you have suggested it is any breach whatsoever is a

2    seep?  I mean my understanding of that term, I mean we can just

3    all rely upon our understanding of that word and that word

4    suggests, for example, when water flows through a canal, which is

5    concrete, whatever water exits through the porous surface of the

6    concrete belongs to the water district at no charge.

7            But if there is a leak, for example, for whatever

8    reason there's a huge crack in the canal and the canal leaks on

9    to adjacent property, the standing water that can be retrieved

10   would be called leakage.  The water that is left on the ground

11   that can't be recovered, wouldn't that be seepage?  Isn't that

12   the distinction?

13           MR. DAYS:  Well, I suppose it depends on what the

14   definition of seepage is.

15           THE COURT:  And that's kind of where we started at.

16           MR. DAYS:  Right.  Right.  I don't mean to go around

17   with the Court, but Ballentine's Law Dictionary is a very

18   respected legal dictionary that under that definition it seems

19   very clear that this is seepage, water going through a hole,

20   whether it be also water going through the ground or water going

21   through the hole of a wall.

22           That is how Ballentine's, which is I think similar to

23   Black's Law Dictionary but everybody can have their own opinion.

24   But that seems to be very clear that this is seepage under the

25   facts alleged in the indictment itself.

8

1          THE COURT:  Did you also look at leakage in

2   Ballentine's Law Dictionary?

3          MR. DAYS:  I didn't see --

4          THE COURT:  I thought that was kind of striking that

5   you didn't distinguish between seepage and leakage because you do

6   seem to use those terms interchangeably.  And when I look at the

7   contract, it doesn't seem to suggest anything about a leak or any

8   water leaking belongs to the water district.  It talks only in

9   terms of seepage and wastewater.

10         So that struck me as quite different.  And when you

11  look at the Eighth Circuit's case, the only circuit that I could

12  find that actually defines this, says that there is an ordinary

13  meaning to the word "seep" and that means to pass, flow, or ooze

14  gradually through a porous substance.  And they found that the

15  ordinary meaning of the word "leak" means an unintended hole, a

16  crack, or the like through which liquid, gas, light, or et cetera

17  enters or escapes.

18         And they use the example that if you have a broken pipe

19  with water coming out, you don't call that -- you know like in

20  your house, if you have a broken pipe that fails or if a pipe

21  that fails, you wouldn't call it a seep, you would call that a

22  leak.  And they talk about that just being within our ordinary

23  understanding of the language.

24         And so it looks to me like your motion selects or

25  construes the definition by Ballentine's of suggesting that leak

9

1    and seep mean the same.

2            MR. DAYS:  Well, our view is set out, Your Honor, that

3    -- and, also, there's another issue about ambiguity.  Our

4    position is that seepage is defined in Ballentine's and it's

5    consistent with what happened here.  There's a hole in the wall

6    and water went through, slow movement of water went through that

7    hole and cracked the stand pipe.

8            THE COURT:  The circumstances were a little bit

9    different, though.  Let's say that the crack, you know, rather

10   than having the amount that was lost but instead it was

11   catastrophic and you had, you know, I don't know, a thousand-acre

12   feet going through per day, let's say.  Would you still call that

13   a seep or are you saying that whether it's a seep or a leak

14   depends upon the volume of water that comes out?

15           MR. DAYS:  Well, I think that that could be a factor,

16   Your Honor, in making that determination.

17           THE COURT:  So it's not how it exits, but it's the

18   amount that exits.  Is that your position?

19           MR. DAYS:  Our position is the volume and how.

20           THE COURT:  I have reviewed all the documents.  Mr.

21   Days, is there anything you wish to add to your argument at this

22   time?

23           MR. DAYS:  Yes, Your Honor.

24           I just want to point out that I'd like to address, I

25   think we've already addressed our position regarding the water

1   being seepage and that that is a loss of water through the ground

2   or a wall in a water delivery system.  We think the indictment

3   has set that out.

4          It's our position that the contract authorized that,

5   and the interpretation of a contract is for the Court subject to

6   de novo review.  Judge Wanger would like to make some comments

7   about this being a legal issue for the Court to decide, so I

8   would like to allow him that opportunity.

9          But I would like to point out, Your Honor, just in

10  terms of seepage and its use being authorized, the contracts

11  themselves authorize use for irrigation and for storage.  So

12  we're not talking about insignificant volumes of water

13  contemplated in the contract.  We're talking about volumes

14  significant enough to be able to be captured, managed, and

15  controlled for storage as well as for irrigation and reasonable

16  and beneficial use.

17         So the contracts themselves contemplate the use of

18  seepage in volumes.  So I'd just like to point that out to the

19  Court.  And I believe Judge Wanger has some comments to make

20  regarding this being a legal question for the Court to determine

21  whether or not this is or isn't seepage.

22         THE COURT:  Mr. Days, can I just clarify?

23         I mean I think we're on the same page that the

24  indictment doesn't ever use the word "seep" or "seepage."  It

25  uses the word "leak" and "leakage."  Right?

1          MR. DAYS:  That is correct, Your Honor.  The indictment

2     does not use the word "seepage."  It uses the word "leak."  And

3     we believe that based on the description given in the indictment

4     that the facts alleged are describing what in fact is seepage,

5     water going through a hole in the wall of the DMC.  And there's a

6     picture that --

7          THE COURT:  Well, let me just stop you.  Your

8     definition doesn't say hole.  Your definition is by slow movement

9     through the ground or wall.  It doesn't say through a hole,

10    right?

11         MR. DAYS:  Well, the actual -- you might be looking at

12    my reply.

13         THE COURT:  No, I'm looking at your motion at Document

14    22, Page 2, Lines 13 through 16.

15         MR. DAYS:  One moment, Your Honor.

16         The loss of water from a water course or body of water

17    natural or artificial by its slow movement through the ground or

18    wall of the reservoir.  Correct, Your Honor.

19         THE COURT:  All right.

20         MR. DAYS:  Correct.  And that's what we believe was

21    described in the indictment.

22         THE COURT:  Okay.  All right.  Thank you, Mr. Days.

23         Mr. Wanger, you had comments?

24         MR. DAYS:  Judge, your volume is -- Judge Wanger, your

25    volume is off.

12

1          THE COURT:  Mr. Wanger, you're muted, sir.

2     (Pause)

3          THE COURT:  Mr. Wanger, I don't know if you can hear me

4     but you're muted.  I can't hear what you're saying.

5          MR. DAYS:  You're muted.

6          THE COURT:  We can't hear you.

7     (Pause)

8          MR. WANGER:  Can you hear me now?

9          THE COURT:  Yes.  Thank you.

10          MR. WANGER:  Oh, I'm sorry.  I apologize.

11          All right.  Let me start over.

12          THE COURT:  All right.

13          MR. WANGER:  Just not to say that this is part of the

14     issue, but so that the evaluation here about this, the law is

15     that I had a requirement of over 20 years to determine the water

16     law issue for Central Valley including this case, and relevant to

17     the issue of the matter of law here regarding this contract and

18     the contract that relates to the issue that has just been

19     discussed between you and the other indication, is O'Neill v.

20     United States, 50 F.3d 677.

21          As a matter of fact, that issue is that basically as a

22     matter of law, this is not something that the, if you will, the

23     jury decides.  This is for the federal judge to make the decision

24     on that issue.  And, in fact, no big deal but that case was my

25     case that was decided quite frankly by the Court of Appeals.

1          So where we are is that there was no issue that was

2     provided here to the grand jury relative to the issue of the

3     seepage.  The water that came through was seepage without a

4     doubt.  And, in fact, quite frankly, there was no issue

5     whatsoever provided there and that is as a matter of law, quite

6     frankly, a basic indication that there is from the standpoint of

7     what was required either no knowledge or it was personal,

8     basically intentionally eliminated and not provided because this

9     water without a doubt was seepage and that was not to be

10    required, it was not to be paid, and that was something that was

11    known.

12          There is an additional issue here that again not a

13    matter of facts but the difference here is that this issue, which

14    is Dennis Falaschi, quite frankly, the whole decision and the

15    whole, if you will, requirement in terms of how the water was

16    ultimately received, was paid, was anything.  There is an

17    assertion in this case that this was the responsibility of

18    Dennis.  The fact is that is absolutely false.  It is a lie.

19          What it was was this -- any law that came through here,

20    and we do believe that it was seepage, quite frankly, came

21    through and it was governed entirely by the water masters.  That

22    had nothing to do with Dennis.  The water masters were governed

23    by the, if you will, the provision that was discovered and that

24    was basically taken care of by the head of this.

25          And they have actually paid millions of dollars.  That

14

1   has been taken care of.  And the bottom line is that ultimately

2   as a matter of law, this individual was paid nothing about any of

3   those pages.  And so at any rate, that is something that I want

4   to indicate because it is very important.  The analysis here is

5   quite -- there's so many indications that are just not accurate

6   whatsoever.

7          But in the final aspect of this, the basic requirement

8   is that in the law, the contract was neither exculpatory nor

9   exonerated because the issue of there was no requirement for

10  payment until this law was something that was as a matter of law

11  and that is not something that is decided is a matter of law for

12  the Court to decide.

13          And, finally, what we see is that in the representation

14  that was indicated and what the Court provided in the, if you

15  will, the indication was that this requirement was the policy of

16  the Department of Justice when a prosecutor conducted a grand-

17  jury inquiry is personally aware of substantial evidence.  The

18  evidence that was concerned about how this water came through and

19  what this water was, was not provided whatsoever.

20          And the bottom line is that is essentially a complete

21  problem.  And in the final analysis, it is our belief that this

22  motion is both accurate and should be granted.  Thank you.

23          THE COURT:  All right.  Thank you, Mr. Wanger.

24          Mr. Barton, do you have comments?

25          MR. BARTON:  Yes, Your Honor.  Just in brief.

15

1           The Government's view is that this motion is baseless.

2     The Government wants to call the Court's attention to Footnote 4

3     in the defendant's own reply where they say that Mr. Falaschi

4     does not argue that the indictment fails to state an offense on

5     its face and also nor does the motion allege that the charges are

6     not based on sufficient evidence.

7           Those are the two questions before the Court of whether

8     or not to sustain an indictment or sustain a motion.  So they're

9     saying that there is no issue, the indictment should be -- should

10    stand and the motion to dismiss should be denied.  Your Honor, it

11    seems that they admit as much in their own motion by that

12    footnote.

13          With that said, even if the Court were to entertain the

14    motion further and even assuming that contract interpretation of

15    seepage was correct and apply to this case versus leakage, the

16    question is, is the water at issue seepage or was it stolen.

17    It's not the question of -- regardless of what the contract says

18    and whether or not they were entitled to seepage, the question is

19    at the site identified the diversion site on the Delta-Mendota

20    Canal, did they steal it.

21          And as the indictment alleges, they had a device

22    installed that you could turn the supposed seepage, you could

23    turn it on and off.  You can't turn seepage on and off.  That's

24    call it that.  And that's what the indictment is alleging, Your

25    Honor.

16

1          THE COURT:  Wasn't the argument though, that Mr. Days

2     is putting forward is everybody knew that this water district

3     could not store water.  So for them to take advantage of seepage,

4     they had to be able to turn it on and off.  I mean I think that's

5     the nature of his argument in that regard.  Is that right?

6          MR. BARTON:  I don't know that I agree with that, Your

7     Honor.  I think they could -- in the Government's view, they

8     would allege that they are taking advantage of if there's

9     seepage, you know, they have some storage capacity.  Whether or

10    not they could store it all or put it to other uses, you know,

11    that's an argument -- we could argue that I'm having to do that.

12         But I think in the Government's view, this water that

13    there was -- they don't need to sort water if they take it and

14    actively sell it for a windfall.  And that's what the

15    Government's allegation is that they were doing.  They were

16    taking this water and storing it for a windfall.  So if it's

17    seepage, you can't turn on and off seepage.  You're going to --

18    and that's what they even allege they did.  They had a whole

19    device to turn it on and off and conceal it.

20         And then the Government would note, not that it's

21    relevant to here in this case, but as far as the evidence in the

22    case, as Mr. Falaschi and his lawyers know, there are over 80

23    undercover recordings of Mr. Falaschi admitting that he stole the

24    water.

25         And with that, the Government submits.

1          THE COURT:  All right.  So at this point, though, what
2     the evidence may be separate from the motion to dismiss, I have
3     to evaluate that on its face.
4          Mr. Days, do you have any additional comments at this
5     time?
6          MR. DAYS:  Yes, Your Honor.  I'd like to just respond
7     to the seepage-leakage issue that we discussed earlier.
8          I'd just like to point out that it's my understanding
9     that the cases that the Court's pointing out regarding insurance
10    coverage, that in those contracts, in those cases, those
11    contracts define the term leakage and seepage.  And --
12          THE COURT:  Again, as I said, I didn't tell you which
13    cases I'm looking at.  Maybe you're looking at different ones.
14    But one in particular, Eighth Circuit case, 2014, Syfco v.
15    Encompass Indemnity Corporation, 761 F.3d 867 at 872.  761 F.3d
16    867 at 872 refers to Random House Webster's Collegiate
17    Dictionary.  It's not referring to a contract.
18          I also looked at McKain v. Safeco.  It's a district
19    court case out of Montana.  That is 2022 WL 3655258 at 1 District
20    of Montana August 25, 2022.  It refers to the Merriam-Webster
21    Dictionary from August 24th of 2022.
22          I also looked at Klamath Water Users Protective
23    Association v. Patterson.  And -- I'm sorry, actually, that case
24    is not one that I -- that was for a different issue.
25          But those two cases in particular are the ones that I

18

1    looked at that did not refer to contract terms but referred just

2    like you do to a dictionary definition.

3            It does strike me, though, that in arguing this, there

4    was an assumption seepage equals leakage.  But, again, I didn't

5    rely upon any contract.  I have not relied upon any case that

6    refers to a contractual term because I don't think that that

7    helps us here.  I'm looking at cases, and the Eighth Circuit case

8    in particular, which just relies upon a different definition.

9    And in those cases, they look at both what "seep" means and what

10   "leak" means and contrast them.

11           So with that clarification, Mr. Days, did you have

12   something else to say?

13           MR. DAYS:  Yes, Your Honor.

14           And I believe that when Mr. Wanger was addressing the

15   Court earlier and he made the statement regarding the nature of

16   these contracts, what he was saying was that the contracts are

17   exculpatory and exonerating.  That's --

18           THE COURT:  Doesn't that -- but that presumes that this

19   is seepage, doesn't it?

20           MR. DAYS:  Yes.  It's correct.  And I think really what

21   we're fleshing out here is our position is it's clear.  But I

22   think what the Court's fleshing out is if it's not favorable to

23   us, it appears at the very least there's different legal

24   definitions in that this is ambiguous which then raises

25   questions.

1          THE COURT:  I don't know that I'm saying that, Mr.

2    Days, because what it seems to me is the contract talks about

3    seepage, it talks about wastewater.  It doesn't mention leakage.

4    And it seems like what you're saying is we -- the face of the

5    contact I don't see as ambiguous.

6          I think in discussing it you have suggested an

7    ambiguity that doesn't appear on the face because it doesn't

8    attempt to discuss what a leak is.  But I mean that's how I see

9    it because the contract doesn't suggest -- because a leak could

10   be so catastrophic, it could be so great.  I think that it would

11   be kind of obvious what would happen in that situation.

12          MR. DAYS:  And this wasn't that --

13          THE COURT:  It would try to fix the leak --

14          MR. DAYS:  This wasn't --

15          THE COURT:  -- try to recover what --

16          MR. DAYS:  I'm sorry.  Pardon me, Judge.

17          THE COURT:  No, go ahead.  I was just going to say that

18   they would try to -- they would fix the leak, they would try to

19   recover whatever water had been lost.  But -- and, you know, if a

20   dam breaks, that's not seepage, right?  I think we agree on that.

21          But I don't know why this is different because the

22   allegation in the indictment and, of course, I don't know if

23   that's true or not.  What they're suggesting is a pipe, a drain

24   that had been previously sealed with concrete failed and the

25   water leaked.  And they're saying that your client went in and

20

1  actively manipulated that drain in order to capture the water

2  that was leaking in order to use and sell later on.

3         And, again, that's a factual question that somebody

4  will have to determine, but I'm having difficulty with your

5  motion that just says that's what the allegations of the

6  indictment are.  We're calling that seepage.  The contract says

7  seepage is the property of the water district.  But what I'm

8  suggesting is there is a step missing in between.

9         MR. DAYS:  Your Honor, I just want to make sure that --

10  I have -- I think the indictment, at least as the allegations are

11  in the indictment, I'd want to make sure that it's clear the

12  Government's not claiming that there was a repair done on the

13  DMC.  That's not the allegation.

14         THE COURT:  No, I know.  They're saying that not that

15  it was repaired but that it was the device was put on in order to

16  take advantage of the leak.

17         MR. DAYS:  Well, not on the DMC.  There's no allegation

18  that Mr. --

19         THE COURT:  Between the DMC and the standpipe.

20         MR. DAYS:  The repair to prevent damage caused by the

21  what we call seepage.  There was a repair done on the standpipe

22  which is depicted on Paragraph 13 is in the ditch in Konocti

23  Water District's ditch.  That is what was repaired according to

24  the indictment.

25         There was nothing and a gate replaced because it was

21

1  damaged to be able to control to manage the seep as is

2  contemplated by the contract.  There's no allegation that anybody

3  repaired or did anything to the DMC wall.  That water was coming

4  in on its own independent of --

5       THE COURT:  We're on the same page on that, Mr. Days.

6  That's not really the issue that I'm concerned with because I

7  agree with you.  If that had been repaired, additional concrete

8  put in there, we wouldn't be talking about this because there

9  would have been no water coming out.

10      So the question -- I mean the Government, as I

11 understand the indictment, is suggesting, look, they discovered

12 this situation, took some steps to make it so other people

13 wouldn't discover it, and then took advantage of the leak.  I

14 mean that's in a nutshell what's being said.  But I agree with

15 you.  I'm not suggesting that anyone, your client included,

16 attempted to repair the leak that was -- or the water to stop the

17 water from coming out of the canal.

18      MR. DAYS:  Well, it's actually the opposite.  It's that

19 there was nothing done to cause water to leave the DMC.  That

20 water was --

21      THE COURT:  Right.

22      MR. DAYS:  -- leaving the DMC on its own, no one took

23 any steps to cause that to happen.  And that water, like any

24 seepage, is allowed to be controlled and managed to avoid damage.

25 And that's what the indictment itself alleges.

22

1        Your Honor, the other thing is is that I know that Mr.

2   Barton, the Government, brought up issues regarding Rule 12(b)

3   and made the contention that this motion is basically moot based

4   on Footnote 4.  And Mr. Balazs, we'd like him to say just a few

5   words in response to that argument if the Court believes that it

6   should be addressed.

7        THE COURT:  I'll let anyone say what they need to say.

8        Mr. Balazs, if you want to address that?

9        MR. BALAZS:  Well, just that Footnote 4 does not in any

10  way affect the basis of our motion.  The basis of the motion is

11  12(b)(1) which it says that a court can consider any pretrial

12  motion based, you know, before trial.  12(b)(3), failure to state

13  an offense, the cases that the Government cites typically involve

14  a specific element of the offense that the Government -- that the

15  defense is alleging is missing or is invalid.

16       So we're not making that argument here.  We're not

17  making an argument failure to state an offense because the

18  elements are missing.  That's really the basis of the Footnote 4,

19  and we're not basing a general challenge to the evidence the

20  Government has presented.

21       It's a specific legal question on whether or not in our

22  view the seepage from the canal into the standpipe, not even a

23  leak but a seep from the canal to the standpipe is covered by the

24  contract.  And if it is, it's authorized and there's no

25  (indiscernible).

23

1        THE COURT:  And you agree, Mr. Balazs, though, if it is

2    not seepage but in fact leakage, then we're basically where we

3    are without the contract providing us any assistance at all?

4        MR. BALAZS:  So I would disagree there because my

5    understanding is that the insurance contract case is even if they

6    don't define the term "seepage" and "leakage" in the contract,

7    most of those contracts involve both terms, "seepage" and

8    "leakage" which suggests that they intended a difference between

9    those two terms.

10        In this case, they only used the term "seepage."  They

11    did not use the term "leakage" which I think -- and it should be

12    construed against the Government -- would mean that the term

13    "seepage" is broader and would encompass both potentially leakage

14    and seepage.

15        THE COURT:  Doesn't that suggest -- I mean my head is

16    spinning a little bit because just basically what I'm hearing you

17    say is I should discount what I know to be a difference between

18    these two words even though the contract's not saying that.  The

19    contract doesn't say, hey, any escape from the canal we're

20    calling seepage.

21        And I'm supposed to ignore the difference in those

22    terms, "seep" and "leak," and assume that any breach of the

23    waterway equates to a seepage for purposes of the contract.  I

24    don't see that in the contact.

25        MR. BALAZS:  Well, that's not in the contract.  But

24

1    what the contract uses is a general term "seepage," which I think

2    in this context refers to the quantity of water being released.

3    And the motion states --

4            THE COURT:  (Indiscernible) consider when the contract

5    was originally -- and I'm guessing, but I don't know what the

6    contract was originally developed.  I don't know the nature of

7    the canal, but my guess is it was dirt.  And if you take a dirt

8    canal and you put water through it, there will be seepage not

9    caused by a breach of the wall but because water seeps into

10   porous materials.

11           Then as years go by and these canals are converted to

12   concrete, we also know concrete isn't glass.  It is porous, and

13   you lose water through the walls of the canal.  And, again, we're

14   not talking through a failure of the wall but because that is

15   what naturally occurs.

16           And when you look at the contract, I mean even your

17   motion specifically recognizes that it is water that naturally

18   goes through the wall of the canal and, yet, it seemed to be

19   making the argument that it is any sort of breach of the wall.  I

20   mean because it talks about slow movement through the ground or

21   wall.

22           And yet, you're seeming to impose an understanding of

23   this different than what common understanding of the words are.

24   So I'm having a little difficulty with that.

25           MR. BALAZS:  Well, I know Mr. Days knows the facts here

25

1    much better than I do.  But I mean our main point is that the

2    amount of water that was seeping was very small, one quarter of

3    one percent.  And this isn't a case where a dam is breaking in

4    any sense.  And I think that's encompassed --

5            THE COURT:  But if there were a dam breaking, it sounds

6    like what you would be saying is that's seepage.

7            MR. BALAZS:  If a dam is breaking?  Well, I think

8    that's -- I wouldn't be saying that, and that's not at issue

9    here.  But I think --

10           THE COURT:  So, again, then you agree with Mr. Days

11   that whether it's a seep or a leak depends on the amount of water

12   being lost as well as how it's being lost?

13           MR. BALAZS:  I think that the quantity of the water is

14   most important here.

15           THE COURT:  Then how do we measure the quantity?  Is it

16   at the time, you know, per minute, per day, per year, per decade?

17   How do we measure it then to determine whether it's a leak or a

18   seep?

19           MR. BALAZS:  Well, I think, you know, we've tried to do

20   that in our motion and in our reply brief to kind of quantify

21   what small quantity of water was actually seeping from the canal

22   into the standpipe.  And it's --

23           THE COURT:  So if we're talking about a 130,000-acre

24   feet, that's different than, you know, a drip per minute.  But

25   I'm just wondering, I mean if that's your argument that we have

26

1   to look at the volume lost and the contract doesn't talk about

2   volume loss.  It just talks about loss.

3            And, of course, to be accurate, it doesn't define

4   seepage.  You're relying on a particular dictionary you prefer.

5   There are other dictionaries that define it in a way that isn't

6   consistent with that.

7            But if you're saying that we do have to look at the

8   amount of water lost, where in the contract does it tell us that

9   we do that or how that is to be done?  Is it per minute, per day,

10  per hour, per week, per month?  And when we look at 130,000-acre

11  feet lost, are you telling me that's seepage?

12           MR. DAYS:  Over 20 --

13           MR. BALAZS:  Over 20 -- yeah, over --

14           THE COURT:  Then you're saying you have to look at what

15  decades long or you have to look at a minute.  And I don't know

16  where you're getting that.  That's the trouble with what you're

17  asking me to do.

18           MR. BALAZS:  Go ahead, Marc.

19           MR. DAYS:  Doesn't that go towards the ambiguity of the

20  term?  How is anybody going to make that determination when

21  you're deciding whether or not to use seepage that can be used in

22  volumes to irrigate and to store and to use for beneficial and

23  reasonable use?

24           THE COURT:  Okay.

25           MR. DAYS:  Who knows --

1          THE COURT:  What I'm going to do at this point, if we

2    have anything -- I mean we're going around in circles.  What I'm

3    going to do is give you an opportunity, if you like, to file a

4    brief specifically on the issue of seepage versus leakage or not.

5    You don't have to, but if you would like to, because I've seen

6    some cases, I've seen some courts that define those terms.  So I

7    don't want to be Alice in Wonderland here seeing words that seem

8    obvious to me and being asked to impose a different meaning on

9    those words.

10         If you'd like to do that, how much time would you need?

11   Mr. Days?

12         MR. DAYS:  How much time do we need, Mr. Balazs?

13         MR. BALAZS:  I would ask for two weeks.  I have a

14   capital case I have to be out of town for for a couple of days

15   this week.

16         THE COURT:  All right.  Mr. Barton, are you intending

17   to file a brief, as well?  I don't think they have to be cross --

18   I mean I think they could be cross briefs.  I don't think we need

19   to have reply on this.

20         MR. BARTON:  Your Honor, I'd like to reserve the right.

21   So if they take two weeks, I'd like an additional two weeks to

22   file whatever opposition that we think may be necessary.

23         THE COURT:  Okay.  So I'm limiting -- I just want to

24   know what these words mean and why your definition that you've

25   chosen makes more sense than what some of the other courts have

1   adopted.  And I want not just to talk to me about seepage.  I

2   want you to talk to me about what leakage is because, clearly,

3   the English language just has a distinction between those terms.

4          And if you're saying, fine, okay, you know what, I

5   agree that there is -- that it's maybe not a seep and you want to

6   talk about how that's ambiguous, I think you've already done

7   that, don't you think, Mr. Balazs?

8          MR. BALAZS:  Yes.

9          THE COURT:  All right.  So then I really just want to

10  know what is the definition of these terms and I expect that you

11  all will do a much more comprehensive review of the case

12  authority than -- I mean I just took about a half an hour and I

13  came up with several cases where courts have defined these terms.

14         And what I'll do then is I'll say -- and with that

15  context, Mr. Barton, do you feel like you need to reply or can

16  you just do your independent research on the topic and also have

17  a brief within two weeks?

18         MR. BARTON:  I can do my independent research and have

19  a brief within two -- I'd reserve the right to reply, though,

20  because I don't know exactly what they're going to argue, Your

21  Honor.

22         THE COURT:  All right.  So then let's do this.  We'll

23  have everybody file their briefs if they choose by February 6 and

24  any reply to your opponent's brief by February 21.  Does that

25  work?

29

1          MR. BALAZS:  Yes, Your Honor.

2          MR. DAYS:  Yes.  Thank you, Your Honor.

3          THE COURT:  All right.

4          MR. BARTON:  Yes, Your Honor.  That works for the

5     Government.

6          THE COURT:  Anything else at this time for this motion?

7          MR. DAYS:  I don't believe so.

8          THE COURT:  Mr. Barton, anything else?

9          MR. BARTON:  No, Your Honor.

10          THE COURT:  All right, then.  Thank you, counsel.

11          MR. DAYS:  Thank you, Your Honor.

12      (Proceedings adjourned at 11:40 a.m.)

13                    ---O0O---

14

15

16              **C E R T I F I C A T E**

17     I, DIPTI PATEL, court-approved transcriber, certify that the

18     foregoing is a correct transcript from the official electronic

19     sound recording of the proceedings in the above-entitled matter.

20

21     *Dipti Patel*

22     _____

23     DIPTI PATEL, CET-997

24     LIBERTY TRANSCRIPTS              Date: January 24, 2023

25