OLIVER W. WANGER, Bar No. 40331
Wanger Jones Helsley PC
265 E. River Park Circle, Suite 310
P.O. Box 28340
Fresno, CA 93729
Telephone: (559) 233-4800
Fax: (559) 233-9330
owanger@wjhattorneys.com

MARC DAYS, Bar No. 184098
Days Law Firm
1107 R Street
Fresno, CA 93721
Telephone: (559) 708-4844
Fax: (559) 486-1826
marcdays@dayslawfirm.com

JOHN BALAZS, Bar No. 157287
Attorney at Law
916 2nd Street, Suite F
Sacramento, CA 95814
Telephone: (916) 447-9299
Fax: (916) 557-1118
balazslaw@gmail.com

Attorneys for Defendant
DENNIS FALASCHI

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DENNIS FALASCHI,<br><br>Defendant. | No.  1:22-cr-00103-JLT-SKO<br><br>**Defendant Dennis Falaschi's Reply To Government's Supplemental Brief In Opposition To Defendant's Motion To Dismiss**<br><br>***Request for Evidentiary Hearing*** |

## I.     INTRODUCTION

The government's supplemental brief provides no argument or authority on the meaning of seepage.[1]  Rather than address the definition of seepage, the government's supplemental brief appears to argue the jury should determine whether the leakage described in the indictment is seepage under the water contract.  [Dkt 38:2-6].

What is "seepage" under the water contracts is a question of contract interpretation, a question for the court, a matter of law, subject to de novo review.  *O'Neill v. United States*, 50 F.3d 677, 682 (9th Cir. 1995).  The government does not address precedent holding that contract interpretation is a question for the court.

As a matter of law, the water leaking from a drain, near milepost (MP) 94.58 on the Delta Mendota Canal (DMC), into a ditch PWD controlled, is seepage under the water contracts based on the common definition of "seepage," as well as extrinsic evidence of course of dealing, usage of trade, and course of performance.  [Dkt. 1 at ¶ 12].  Seepage is commonly defined as leakage, specifically, "the act or process of seeping; leakage."[2]  Seepage is also defined as "something that

---

[1] Remarkably, the government argues the defense's contractual argument conflicts with the grand jury's findings.  No conflict exists because the grand jury made no such finding.  The government does not dispute that it did not present to the grand jury the water contract, nor the water contract's terms regarding the use of seepage.   Department of Justice Manual, Grand Jury policy 9-11.233 provides:

In *United States v. Williams*, 112 S. Ct. 1735 (1992), the Supreme Court held that the Federal courts' supervisory powers over the grand jury did not include the power to make a rule allowing the dismissal of an otherwise valid indictment where the prosecutor failed to introduce substantial exculpatory evidence to a grand jury.  ***It is the policy of the Department of Justice***, however, ***that when a prosecutor*** conducting a grand jury inquiry ***is personally aware of substantial evidence that directly negates the guilt of a subject of the investigation, the prosecutor must present or otherwise disclose such evidence to the grand jury before seeking an indictment against such a person.***  While a failure to follow the Department's policy should not result in dismissal of an indictment, appellate courts may refer violations of the policy to the Office of Professional Responsibility for review.  [emphasis added].

[2] Barnhart, C.L. (1953) The American College Dictionary, at pg. 1097.  Random House. [Dkt 37 at pg. 14 of 25];  See also Stein, J. (1966) The Random House Dictionary of the English Language, The Unabridged Edition, at pg. 1291 [Dkt 37 at pg. 19 of 25].

seeps or leaks out."[3]  The terms "leak," "leaks," "leaking," or "leakage" are not contained in the water contracts.

The extrinsic evidence proves course of dealing, usage, and performance, specifically that: the San Luis Delta Mendota Water Authority (the "Authority") was responsible for monitoring, maintaining, and operating the DMC on behalf of the government; since at least 2008, the Authority knowingly allowed DMC water, including DMC water that is the subject of the indictment, to seep into PWD controlled ditches.[4]  The extrinsic evidence proves that nearly every day for approximately twelve years, the Authority knowingly allowed DMC water to seep into PWD ditches through drains near MP 91.71 and MP 100.23 on the DMC at the rate of 10 acre-feet (AF) a day at each location.  [Dkt 37 at pgs. 21, 23, and 25 of 25].  There is no issue that the Authority actually saw everyday, and specifically knew, that the seepage water from the DMC was moving into PWD ditches.

The seepage through the drain near MP 94.58, like the seepage through the drain near MP 91.71, entered a PWD controlled ditch through a standpipe.  However, unlike the seepage through the drain near MP 91.71, after the seepage cracked the standpipe near MP 94.58, a gate was placed in the standpipe which allowed PWD to manage, control, direct, and reduce the amount of seepage.

## II.    ARGUMENT

In support of its argument that the interpretation of seepage is a question for the jury, the government relies on *United States v. Boren*, 278 F.3d 911, 914 (9th Cir. 2002) and *United States v. Schafer*, 625 F.3d 629, 635 (9th Cir. 2010).  The government's reliance on both cases is misplaced.

///

---

[3] See fn. 2 infra.

[4] According to Federal Burea of Investigation (FBI) Special Agent (SA) Jonathan Cusak, on June 8, 2016, Mark Walsh, a Hydrology Technician for the Authority responsible for monitoring the DMC in Panoche Water District informed FBI SA Jonathan Cusak and SA Ray LeLoup that he (Walsh) had first hand knowledge that since 2009 PWD was blending drainage water with DMC water at mile marker 94.58.

USA v. Falaschi, case #1:22-cr-00103-JLT-SKO
Reply to Government's Supplemental Brief.

3

In *Boren*, the Ninth Circuit recognized a distinction between a motion to dismiss for failure to state an offense [Rule 12(b)(3)(B)(v)] and pre-trial motions to dismiss premised on other grounds in which a court may take evidence and make factual determinations.[5] *Boren,* 278 F.3d at 914.[6]  In *Schafer*, the Ninth Circuit recognized that even when addressing the defense of entrapment, a question generally for the jury and not the court, a motion to dismiss under Rule 12(b)(1) should be granted if there is no need to choose between witnesses or judge credibility. *Schafer,* 625 F.3d at 636-637.[7]

---

[5] As stated at the hearing on the motion to dismiss, the basis of the motion is Rule 12(b)(1), which states a party may raise by pretrial motion any defense that the court can determine without a trial on the merits.  [Dkt 34 at 22:9-18].  As stated at the hearing, the motion is not based on Rule 12(b)(3), failure to state an offense.  [Dkt 34 at 22:9-18].

[6] In *Boren*, the defendant was charged with making false statements to a financial institution, in violation of 18 U.S.C. §1014, and moved to dismiss on the grounds the indictment failed to state an offense, arguing the indictment was insufficient as a matter of law because it failed to allege defendant's false statements were intended to influence a loan or other extension of credit. *Boren*, 278 F.3d at 913.  The district court conducted an evidentiary hearing on the issue of whether funds were at risk and then found the indictment made no mention of any advance, loan, or commitment on the part of the bank.  *Id*.  The Ninth Circuit noted that on a motion to dismiss for failure to state an offense, the indictment either states an offense or it does not, there is no reason to conduct an evidentiary hearing.  *Id*. at 914.  The Ninth Circuit reversed, holding 18 U.S.C §1014 was not limited to false statements made with regards to loans, but extended to any application, commitment or other specific transaction.  *Id*. at 914-915.

[7] In *Schafer*, the defendants were charged with conspiring to manufacture and distribute marijuana plants.  *Schafer*, 625 F.3d at 633.  The defendants moved to dismiss on the grounds of entrapment by estoppel, arguing that two local law enforcement officers informed the defendants they were working on behalf of the federal government and that defendants' conduct was legal. *Id*. 633-634.  The government argued the defendants had not reasonably relied on the alleged representation of the law enforcement officers and to prove lack of reliance, the government submitted copies of written recommendations distributed by defendants to "patients," which included a disclaimer that stated that marijuana remained illegal under federal law."  *Id*. at 634.

In denying the motion to dismiss, the district court held even assuming local law enforcement were federal agents, the defendants had not adequately shown they relied on alleged misinformation.  *Id*. at 634.  In affirming, the Ninth Circuit noted that in order to succeed on their motion to dismiss, the defendants would have had to show they were entitled to an entrapment by estoppel defense as a matter of law.  *Id*. 626-637; citing *Sherman v. United States*, 356 U.S. 369, 373 (1958) (defendant established entrapment as a matter of law because the court did not need to choose between witnesses, nor judge credibility in order to determine the merits of the defense); also citing *Mathews v. United States*, 485 U.S. 58, 63 (1998) ("The question of entrapment is generally one for the jury, rather than for the court.")  The Ninth Circuit held that even assuming

USA v. Falaschi, case #1:22-cr-00103-JLT-SKO
Reply to Government's Supplemental Brief.

4

However, unlike an entrapment defense, the interpretation of a contract, whether a question of law or a mixed question of law and fact, is an issue for the court to decide as a matter of law and subject to de novo review. *Klamath Water Users Protective Ass'n v. Patterson*, 204 F.3d 1206, 1210 (9th Cir. 1999); *O'Neill v. United States*, 50 F.3d 677, 682 (9th Cir. 1995); *Kennewick Irrigation Dist. v. United States*, 880 F.2d 1018, 1032 (9th Cir. 1989); *Cung Le v. Zuffa, LLC*, 108 F.Supp.3d 768, 777 (N.D.Cal. 2015)("It cannot be left to the jury to decide which side's interpretation of the contract is the correct one because contract interpretation is an issue of law."). The government's filings ignore this clearly established precedent.

The government ignores precedent establishing that the determination of whether a contract's language is ambiguous is a question of law. *Ibid.* The government further ignores precedent establishing that ambiguity in a contract should be interpreted against the drafter. *Kennewick Irrigation Dist.,* 880 F.2d at 1033; *see also United States v. Transfiguracion*, 442 F.3d 1222, 1228 (9th Cir. 2006) ("ambiguities in contracts are to be construed unfavorably to the drafter").

The best interpretation of the term "seepage" in the water contract includes DMC water described in the indictment as leaking from a drain into a PWD controlled ditch. Even if a contract's terms are clear, extrinsic evidence may be considered when interpreting a contract; a determination of ambiguity is not a condition precedent to the admissibility of extrinsic evidence. *O'Neill*, 50 F.3d at 684. In the alternative, extrinsic evidence establishes that what the indictment describes as "leakage" can reasonably be interpreted as "seepage" under the water contracts based on both the definition of seepage in dictionaries published at the time of the initial contract and evidence of course of dealing, usage of trade, and course of performance. *Uniform Commercial Code*, Section 2-202.

For purposes of the motion to dismiss, it is undisputed that the DMC is 117 miles long and that 2,000,000 acre feet of water passes through it each year. It can not be disputed that since at

---

what defendants ascribe to law enforcement were true, the defendants failed to present evidence that they relied on the alleged statements because the "patient" recommendations they issued clearly stated that "cannabis remains illegal under Federal law." *Id*. at 637.

least 2009, the Authority, operating the DMC on behalf of the government, was fully aware of the seepage which is the subject of the indictment.[8]   It is undisputed that water escapes ("seeps") from the DMC through drain pipes, small openings, in the wall of the DMC.[9]  It is undisputed that:

- water from the DMC entered a standpipe located in a PWD controlled ditch [Dkt 1 at pg.4];[10]

- water from the DMC entered into the standpipe from a drain in the wall of the DMC near milepost 94.58 [Dkt 1 at ¶12];

- water from the DMC entered the standpipe and cracked the gate of the standpipe [Dkt 1 at ¶12];

- the gate of the standpipe was fixed [Dkt 1 at ¶13];

- water from the DMC that entered the standpipe was utilized by PWD [Dkt 1 at ¶10];

- and that PWD's water contract authorized the use of seepage for irrigation and storage, then subsequently authorization was expanded to reasonable and beneficial use.  [Dkt 22-7 at pg. 12 of 30; Dkt 22-8 at pg. 22 of 57; Dkt 22-9 at pg. 34 of 64; Dkt 22-10 at pg. 3 of 8; Dkt 22-11 at pg. 3 of 8; Dkt 22-12 at pg. 2 of 8].

It can not be disputed that the federal government managed and operated the DMC and that the Authority managed, saw, and monitored the DMC on behalf of the government everyday during the time period alleged in the indictment, a span of 23 years.  [Dkt 1 at ¶¶6 and 9].  It also can not be disputed that Mark Walsh, a Hydrology Technician for the Authority:

- was responsible for monitoring the DMC in PWD from at least 2008 to 2020 [Dkt 37 at pg. 21 of 25];

- was aware, for at least 12 years, that for ten months out of each year DMC water escaped ("seeped") through a drain, in the DMC wall near MP 91.71, into a PWD ditch nearly everyday [Dkt 37 at pg. 23 of 25];

- was aware for "several years," that for ten months out of each year DMC water escaped ("seeped") through a drain, in the DMC wall near MP 100.23, into a PWD ditch nearly everyday;

---

[8] See fn. 4 infra.

[9] See fn. 4 infra; See also Dkt 37 at pgs. 21, 23, and 25.

[10] A photograph in the indictment depicts both the DMC at MP 94.58 and the PWD controlled canal.  [Dkt 1 at pg. 4].  The photograph shows the standpipe is in the PWD canal.  *Id.*

- and was aware that since 2009, DMC water that is the subject of the indictment escaped ("seeped") through a drain in the DMC wall near MP 94.58, into a PWD ditch and was used by PWD to blend drainage water.[11]

## III.    CONCLUSION

It is undisputed that drainage water was not removed from PWD due to the government's unlawful conduct. *Firebaugh Canal Co. v. United States*, 203 F.3d 568, 570 (9th Cir. 2000);  see also Dkt 22-9 at pg. 8 of 64; Dkt 22-10 at pg. 3 of 8; Dkt 22-11 at pg. 3 of 8; Dkt 22-12 at pg. 3 of 8; Dkt 22-13 at pg. 3 of 4.  The drainage water the government unlawfully failed to remove sterilizes and damages land and crops in PWD.  Firebaugh Canal Co., 203 F.3d at 578.  The Authority was aware that water escaping ("seeping") from the DMC into PWD ditches, through drains in the wall of the DMC, was being used to blend drainage water the government unlawfully failed to remove from PWD.[12]

If PWD's utilization of the DMC water that entered a PWD controlled ditch through the standpipe was a problem, the Authority would easily have put a stop to it.  The Authority did not stop the use of the water, the Authority knew of it and allowed it for many years.  The seepage was accessed at the direction of the board and financially benefited the board and farmers in PWD, not Mr. Falaschi, who received a modest salary as a matter of public record in comparison to other water district general managers.  [Dkt 22 at 2:22-28; Dkt 22-5 at pg. 5 of 8; Dkt 22-6 at pg. 3 of 4].  Mr. Falaschi never received any of PWD's water, including the alleged seepage, and was never paid for such water.

For the reasons discussed above, the defense requests the Court grant the motion to dismiss counts 1 and 2 or, alternatively, grant an evidentiary hearing if a fact above is in dispute.

///

///

///

///

---

[11] See fn. 4 infra.

[12] See fn. 4 infra.

USA v. Falaschi, case #1:22-cr-00103-JLT-SKO
Reply to Government's Supplemental Brief.

7

Dated:  February 21, 2023                Respectfully submitted,

/s/ Oliver W. Wanger
OLIVER W. WANGER

/s/ Marc Days
MARC DAYS

/s/ John Balazs
JOHN BALAZS

Attorneys for Defendant
DENNIS FALASCHI