PHILLIP A. TALBERT
United States Attorney
JOSEPH D. BARTON
HENRY Z. CARBAJAL III
Assistant United States Attorneys
2500 Tulare Street, Suite 4401
Fresno, CA 93721
Telephone: (559) 497-4000
Facsimile: (559) 497-4099

Attorneys for Plaintiff
United States of America

IN THE UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| UNITED STATES OF AMERICA,<br><br>Plaintiff,<br><br>v.<br><br>DENNIS FALASCHI,<br><br>Defendant. | CASE NOS. 1:22-CR-00103-JLT-SKO and<br>1:23-CR-00016-JLT-SKO<br><br>PLEA AGREEMENT |

I.   **INTRODUCTION**

A.   **Scope of Agreement.**

The Indictment in Case No. 1:22-CR-00103-JLT-SKO charges the defendant, Dennis Falaschi, in Count One with conspiring to take government property in violation of 18 U.S.C. §§ 371 and 641, and in Count Two with taking government property in violation of 18 U.S.C. § 641. The Indictment in Case No. 1:23-CR-00016-JLT-SKO charges the defendant with filing false tax returns in violation of 26 U.S.C. § 7206(1). The parties agree that these cases should now be treated as one combined case. This document contains the complete Plea Agreement between the United States Attorney's Office for the Eastern District of California and the defendant regarding these cases. This Plea Agreement is limited to the United States Attorney's Office for the Eastern District of California (the "government") and cannot

1

1 bind any other federal, state, or local prosecuting, administrative, or regulatory authorities.

### B. Court Not a Party.

The Court is not a party to this Plea Agreement. Sentencing is a matter solely within the discretion of the Court, and the Court may take into consideration any and all facts and circumstances concerning the criminal activities of the defendant. This includes activities that may not have been charged in the Indictments and Information. The Court is under no obligation to accept any recommendations made by the parties, and the Court may in its discretion impose any sentences it deems appropriate up to and including the maximums stated in this Plea Agreement.

If the Court should impose any sentences up to the maximum, the defendant cannot, for that reason alone, withdraw his guilty pleas and he will remain bound to fulfill all of the obligations under this Plea Agreement. The defendant agrees the prosecutor, defense counsel, and the Court cannot make a binding prediction or promise regarding the sentences he ultimately receives.

## II. DEFENDANT'S OBLIGATIONS

### A. Guilty Plea.

For Case No. 1:22-CR-00103-JLT-SKO, the defendant will plead guilty to the charge in Count One in the Indictment that he conspired to take government property in violation of 18 U.S.C. §§ 371 and 641. For Case No. 1:23-CR-00016-JLT-SKO, the defendant will plead guilty to an Information charging him with one count of filing a false tax return in violation of 26 U.S.C. § 7206(1). The defendant agrees that he is in fact guilty of these crimes and that the facts set forth in the Factual Basis for Plea attached as Exhibit A are accurate.

The defendant agrees that this Plea Agreement will be filed with the Court and become a part of the record in these cases. The defendant agrees that he will not be allowed to withdraw his guilty pleas should the Court not follow the parties' sentencing recommendations.

The defendant agrees that the statements made by him in signing this Plea Agreement, including the admissions set forth in the Factual Basis, shall be admissible and useable against the defendant by the government in any subsequent criminal or civil proceedings even if the defendant fails to enter guilty pleas pursuant to this Plea Agreement. The defendant waives any rights under Fed. R. Crim. P. 11(f) and Fed. R. Evid. 410 to the extent that these rules are inconsistent with this paragraph or with this Plea

Agreement generally.

For Case No. 1:23-CR-00016-JLT-SKO, the defendant agrees that, under the United States Constitution, he is entitled to be indicted by a grand jury on the charge to which he is pleading guilty. Pursuant to Fed. R. Crim. P. 7(b), the defendant also agrees to waive any and all rights he has to being prosecuted by way of Indictment and consents to proceed by Information.

**B.** **Restitution.**

The parties agree that no restitution is appropriate in Case Nos. 1:22-CR-00103-JLT-SKO and 1:23-CR-00016-JLT-SKO. For Case No. 1:22-CR-00103-JLT-SKO, the parties agree that Public Water District # 1 has paid up to the maximum lost amount under this agreement. For Case No. 1:23-CR-00016-JLT-SKO, the parties agree that all taxes that the defendant owed to the Internal Revenue Service were in fact paid.

**C.** **Forfeiture.**

The parties agree that no forfeiture is appropriate.

**D.** **Fine.**

The parties agree that no fine is appropriate.

**E.** **Special Assessment.**

The defendant agrees to pay a special assessments totaling $200 at the time of sentencing by delivering a check or money order, payable to the United States District Court, to the United States Probation Office before the sentencing hearing. He also agrees that this Plea Agreement is voidable at the option of the government if he fails to pay the assessments prior to that hearing.

**F.** **Violation of Plea Agreement and Withdrawal of Plea.**

If the defendant, cooperating or not, violates this Plea Agreement in any way, withdraws his pleas, or tries to withdraw his pleas, this Plea Agreement is voidable at the option of the government. If the government voids the Plea Agreement based on the defendant's violation, the government will no longer be bound by its representations to the defendant concerning the limits on criminal prosecution and sentencing as set forth herein. A defendant violates a plea agreement by committing any crime or providing or procuring any statement or testimony that is knowingly false, misleading, or materially incomplete in any litigation or sentencing process in these cases, or engaging in any post-plea

misconduct constituting obstruction of justice. Except as otherwise permitted in this Plea Agreement, varying from stipulated United States Sentencing Guidelines ("U.S.S.G.") application or agreements, personally or through counsel, also constitutes a violation of the agreement. The government will have the right to prosecute the defendant on the counts to which he pleaded guilty and file any new charges that would otherwise be barred by this Plea Agreement. The defendant shall thereafter be subject to prosecution for any federal criminal violation of which the government has knowledge. The decision to pursue any or all of these options is solely in the discretion of the government.

By signing this Plea Agreement, the defendant agrees to waive any objections, motions, and defenses that he may have to the government's decision. Any prosecutions that are not time-barred by the applicable statute of limitations as of the date of this Plea Agreement may be commenced in accordance with this paragraph notwithstanding the expiration of the statute of limitations between the signing of this Plea Agreement and the commencement of any such prosecutions. The defendant also agrees not to raise any objections based on the passage of time with respect to such counts including, but not limited to, any statutes of limitation or the Speedy Trial Act or Speedy Trial Clause of the Sixth Amendment. The determination whether the defendant violated the Plea Agreement will be by a probable cause standard.

In addition, all statements made by the defendant to the government or other designated law enforcement agents, or any testimony given by the defendant before a grand jury or other tribunal, whether before or after this Plea Agreement, shall be admissible in evidence in any federal criminal, civil, or administrative proceedings hereafter brought against the defendant. The defendant shall assert no claim under the United States Constitution, any statute, Fed. R. Crim. P. 11(f), Fed. Rule Evid. 410, or any other federal rule that statements made by him before or after this Plea Agreement, or any leads derived therefrom, should be suppressed. By signing this Plea Agreement, the defendant waives any and all rights in the foregoing respects.

G. **Agreement to Cooperate.**

The defendant agrees to cooperate as directed by the government. As used in this Plea Agreement, cooperation requires the defendant to: (1) respond truthfully and completely to all questions, whether in interviews, in correspondence, in telephone conversations, before a grand jury, or at any trial

4

or other court proceeding, (2) attend all meetings, grand jury sessions, trials, and other proceedings at which the defendant's presence is requested by the government or compelled by subpoena or court order, (3) produce voluntarily any and all documents, records, or other tangible evidence requested by the government, and (4) not participate in any criminal activity while cooperating with the government.

### III.     GOVERNMENT'S OBLIGATIONS

#### A.     Other Charges.

The government agrees to move, at the time of sentencing, to dismiss without prejudice the remaining counts in the Indictments in Case Nos. 1:22-CR-00103-JLT-SKO and 1:23-CR-00016-JLT-SKO. The government also agrees not to reinstate the dismissed counts or bring any other charges arising from the conduct outlined in the Factual Basis for Plea except if this Plea Agreement is violated and voided as set forth herein, including as set forth in Sections II.F (Violation of Plea Agreement by Defendant and Withdrawal of Plea), VI.B (Stipulated U.S.S.G. calculations), and VII.B (Waiver of Appeal and Collateral Attack).

#### B.     Recommendations.

The government will recommend a two-level reduction if the offense level is less than 16 or a three-level reduction if the offense level reaches 16 in the computation of the defendant's total offense level if he demonstrates acceptance of responsibility as defined in U.S.S.G. § 3E1.1. This includes the defendant meeting with and assisting the probation officer in the preparation of the pre-sentence report, being truthful and candid with the probation officer, and not otherwise engaging in misconduct that constitutes obstruction of justice within the meaning of U.S.S.G. § 3C1.1 either in the preparation of the pre-sentence report or during the sentencing proceeding.

At the time of sentencing, the government agrees to recommend that the defendant's applicable guideline range as determined by the Court be reduced by up to fifty percent if he provides substantial assistance to the government under U.S.S.G. § 5K1.1.

The defendant must not violate this Plea Agreement under Section II.F and comply with the agreement under Section II.G. The defendant agrees that it is within the sole and exclusive discretion of the government to determine whether he has provided substantial assistance. He also agrees that the government may recommend a reduction in his sentences of less than fifty percent, or no reduction at

all, depending on the level of assistance the government determines he has provided. Finally, the defendant agrees that a motion pursuant to U.S.S.G. § 5K1.1 is only a recommendation and is not binding on the Court, that this Plea Agreement confers no right upon the defendant to require that the government make a U.S.S.G. § 5K1.1 motion, and that this agreement confers no remedy upon the defendant in the event that the government declines to make a U.S.S.G. § 5K1.1 motion. Specifically, the defendant will not try to file a motion to withdraw his guilty pleas if the government decides against recommending a sentence reduction or recommends a sentence reduction less than the defendant thinks is appropriate.

### C. Use of Information for Sentencing.

The government is free to provide full and accurate information to the Court and the United States Probation Office, including answering any inquiries and rebutting any inaccurate statements that are made. The defendant agrees that nothing in this Plea Agreement bars the government from defending on appeal or collateral review any sentences that the Court may impose.

## IV. ELEMENTS OF THE OFFENSE

At a trial, the government would have to prove beyond a reasonable doubt the following elements to convict the defendant of conspiring to take government property in violation of 18 U.S.C. §§ 371 and 641:

Elements for 18 U.S.C. § 371:

1. There was an agreement between two or more persons to take government property in violation of 18 U.S.C. § 641;
2. The defendant became a member of the conspiracy while knowing at least one of its objects and intending to help accomplish that object; and
3. One of the members of the conspiracy performed at least one overt act for the purpose of carrying out the conspiracy.

Elements for 18 U.S.C. § 641:

1. The defendant knowingly took property with the intention of depriving the owner of the use or benefit of the property;
2. The property belonged to the United States; and

6

3. The value of the property exceeded $1,000.

At a trial, the government would have to prove beyond a reasonable doubt the following elements to convict the defendant of filing a false tax return in violation of 26 U.S.C. § 7206(1):

1. The defendant signed and filed a tax return that he knew contained materially false information;
2. The tax return included a written declaration made under penalty of perjury that it was complete; and
3. The defendant acted willfully in filing the tax return.

The defendant understands the nature and elements of the crimes to which he is pleading guilty, together with the possible defenses thereto, and has discussed them with his attorney.

## V. MAXIMUM SENTENCES

### A. Maximum Penalty.

The maximum sentence that the Court can impose for conspiring to take government property in violation of 18 U.S.C. §§ 371 and 641 is five years of incarceration, a fine of $250,000, three years of supervised release, a special assessment of $100, and restitution. The maximum sentence that the Court can impose for filing a false tax return in violation of 26 U.S.C. § 7206(1) is three years of incarceration, a fine of $250,000, one year of supervised release, a special assessment of $100, and restitution.

### B. Supervised Release Violations.

The defendant agrees that if he violates a condition of supervised release at any time during the term of supervised release, the Court may revoke the term of supervised release and require him to serve up to two additional years of imprisonment.

## VI. SENTENCING DETERMINATION

### A. Statutory Authority.

The defendant agrees that the Court must consult the U.S.S.G. and determine a non-binding and advisory sentencing range, and consider these factors when determining sentences. The defendant further agrees that the Court will consider whether there is a basis for departure from the sentencing range, either above or below the sentencing range, because there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration in formulating the

7

U.S.S.G. Finally, the defendant agrees that the Court, after consultation and consideration of the U.S.S.G., must impose sentences that are reasonable under the factors set forth in 18 U.S.C. § 3553(a).

**B.      Stipulated U.S.S.G. Calculations.**

The parties agree there is no material dispute as to the following U.S.S.G. variables and therefore stipulate to the following:

1. Criminal History Category: I
2. Case No. 1:22-CR-00103-JLT-SKO
   a. Base Offense Level: 6
   b. Loss Amount: +16 (over $1,500,000 but under $3,500,000)
   c. Age and Physical Condition: -2 (U.S.S.G. §§ 5H1.1 and 5H1.4)
3. Case No. 1:23-CR-00016-JLT-SKO
   a. Base Offense Level: 6
   b. No additional enhancements because the tax loss is zero
   c. No increase in total offense level because the offense level for this case is nine or more levels less serious than the offense level for Case No. 1:22-CR-00103-JLT-SKO (U.S.S.G. § 3D1.4)
4. Acceptance of Responsibility: - 3
5. Zero-point offender reduction: -2
6. Combined Total Offense Level: 15
7. Departures or Other Enhancements or Reductions:

The parties agree that they will not seek or argue in support of any other specific offense characteristics, Chapter Three adjustments other than the decrease for "Acceptance of Responsibility," cross-references, or departures, except that the government may move for a departure or adjustment based on defendant's post-plea obstruction of justice.

8. Parties' Sentencing Recommendations:

The government may recommend that the defendant be sentenced to a term of imprisonment up to the low-end of the applicable guideline range as determined by the Court after accounting for any cooperation credit and one year of supervised release. The defendant is free to recommend to the Court

8

whatever sentence he believes is appropriate under 18 U.S.C. § 3553(a).

## VII. WAIVERS

### A. Waiver of Constitutional Rights.

The defendant agrees that by pleading guilty he is waiving the following constitutional rights: (1) to plead not guilty and to persist in that plea if already made, (2) to be tried by a jury, (3) to be assisted at trial by an attorney, who would be appointed if necessary, (4) to pursue any affirmative defenses, Fourth Amendment or Fifth Amendment claims, constitutional challenges to the statutes of conviction, and other pretrial motions that have been filed or could be filed, (5) to subpoena witnesses to testify on his behalf, (6) to confront and cross-examine witnesses against him, and (7) not to be compelled to incriminate himself.

### B. Waiver of Appeal and Collateral Attack.

The defendant agrees that the law gives him a right to appeal his guilty pleas, convictions, and sentences. The defendant also agrees as part of his plea, however, to give up the right to appeal the guilty pleas, convictions, and sentences imposed in this case as long as the sentences do not exceed the maximums for the offenses to which he is pleading guilty. Finally, the defendant agrees this waiver includes, but is not limited to, any and all constitutional or legal challenges to his convictions and guilty pleas, including arguments the statutes to which he is pleading guilty are unconstitutional, and any and all claims the Factual Basis is insufficient to support his guilty pleas. The defendant also gives up the right to appeal any restitution order that the Court may impose.

Notwithstanding the defendant's waiver, the defendant would still retain the right to appeal if the sentences imposed by the Court exceed the maximums or the government appeals the sentences in the case. The defendant agrees that these circumstances occur infrequently and that in almost all cases this Plea Agreement constitutes a complete waiver of all appellate rights.

Regardless of the sentences the defendant receives, he also gives up any right to bring a collateral attack, including a motion under 28 U.S.C. §§ 2255 or 2241, challenging any aspect of the guilty pleas, convictions, or sentences, except for non-waivable claims.

Notwithstanding the government's agreements in Section III.A above, if the defendant attempts to vacate his pleas, dismiss the underlying charges, or modify or set aside his sentences on the counts to

9

which he is pleading guilty, the government shall have the rights set forth in Section II.F.

### C. Waiver of Attorneys' Fees and Costs.

The defendant agrees to waive all rights under the "Hyde Amendment," Section 617, P.L. 105-119 (Nov. 26, 1997), to recover attorneys' fees or other litigation expenses in connection with the investigation and prosecution of all charges in the above-captioned matters and any related allegations.

## VIII. ENTIRE PLEA AGREEMENT

Other than this Plea Agreement, no agreement, understanding, promise, or condition between the government and the defendant exists, nor will such agreement, understanding, promise, or condition exist unless it is committed to in writing and signed by the defendant, counsel for the defendant, and counsel for the government.

///

///

///

## IX. APPROVALS AND SIGNATURES

### A. Defense Counsel:

I have read this Plea Agreement and have discussed it fully with my client. The Plea Agreement accurately and completely sets forth the entirety of the agreement. I concur in my client's decision to plead guilty as set forth in this Plea Agreement.

Dated: 5/22/24

MARC DAYS
Attorney for Dennis Falaschi

### B. Defendant:

I have read this Plea Agreement and carefully reviewed every part of it with my attorney. I understand it, and I voluntarily agree to it. I have consulted with my attorney and fully understand my rights with respect to the provisions of the U.S.S.G. that may apply to my cases. No other promises or inducements have been made to me, other than those contained in this Plea Agreement. No one has threatened or forced me to enter into this Plea Agreement, and I am satisfied with the representation of my attorney in these cases.

Dated:

DENNIS FALASCHI
Defendant

### C. Attorney for United States:

I accept and agree to this Plea Agreement on behalf of the government.

Dated:                                    PHILLIP A. TALBERT
                                          United States Attorney


                                          JOSEPH BARTON
                                          HENRY CARBAJAL III
                                          Assistant United States Attorneys

11

# EXHIBIT A

## FACTUAL BASIS FOR PLEA

Public Water District # 1 ("PWD") is in the State and Eastern District of California near the San Joaquin River where it sells water to farmers with over 38,000 acres of farmland. PWD is governed by an elected Board of Directors and the day-to-day operations are handled by a General Manager. The defendant, Dennis Falaschi, was hired by PWD as an assistant General Manager in 1984 and became its General Manager in 1986.

At all relevant times, PWD obtained water that it sold by purchasing water from the federal government and collecting drainage water from farms. The federal water that PWD purchased came from the Delta-Mendota Canal ("DMC"), which is a federally owned canal operated by the United States Department of the Interior's Bureau of Reclamation. PWD purchased federal water from the DMC pursuant to a contract that it entered into with the Bureau of Reclamation. The Bureau of Reclamation, in turn, transferred operation and maintenance of DMC facilities within PWD to the San Luis Delta-Mendota Water Authority ("Water Authority").

The federal water that PWD purchased from the DMC was fresh water that could be used for farming immediately. The drainage water that PWD collected from farms, however, was high in salt content and toxins including selenium. Irrigation and drainage are inherently linked. Any project that brings fresh water to farmland must address the salty and toxic drainage water that remains after the crops have been irrigated. Failure to do so may harm the farmland and render it useless. Indeed, Mr. Falaschi came up with various innovative and successful drainage solutions over the years.

Prior to 2000, Mr. Falaschi learned that water from the DMC near milepost marker 94.58 was leaking from an old standpipe into a parallel canal in PWD and impacting Farmer # 1's land. The standpipe and parallel canal belonged to Farmer # 1, and Farmer # 1 was then the President of PWD's board. According to Mr. Falaschi, Farmer # 1 directed Mr. Falaschi not to report the leak to the authorities. PWD employees subsequently modified the old standpipe so that it would not leak and could be opened and closed. This allowed for water to be taken from the DMC on demand.

In 2000, Farmer # 1 agreed to provide a revocable lease to PWD to transport water in the parallel canal to enable PWD to increase the volume of drainage water it could blend into its water supply. In

1 exchange, Farmer # 1 received 600-acre feet of water per year.

2     Evidence obtained during the government's investigation further showed that Mr. Falaschi was just one of several individuals who were involved in the misconduct, and the full extent of the misconduct was unknown to him. PWD board members, supervisors, and lower-level employees likely acted on their own accord and took federal water for their own use and benefit at times. For example, Farmer # 1 likely took the water, or directed his or her ranch hands to take the water, either on their own or by contacting PWD employees directly and not alerting Mr. Falaschi. PWD employees also likely continued taking federal water from sites other than the old standpipe well after Mr. Falaschi left the district in 2017.

    The amount of federal water that was illegally taken for which Mr. Falaschi was responsible was valued at over $1,500,000 but under $3,500,000. Nearly all of that water was taken to blend down and reuse drainage water, which helped protect farmland and improve water quality in the San Joaquin River. The improved water quality contributed to the San Joaquin River being removed from the list of impaired waters under California's Clean Water Act.

    There was no evidence that Mr. Falaschi directly benefitted from the misconduct. Evidence obtained during the government's investigation showed at least some Water Authority personnel previously suspected for several years that federal water was being taken from the old standpipe for blending down and reusing drainage water.

    Moreover, from 2011 through 2016, Mr. Falaschi entered into private water sales where he received payments. The water sold was legitimately sourced from outside PWD and was not federally owned water. Thereafter, on March 15, 2016, in the State and Eastern District of California, Mr. Falaschi signed and filed an Individual Income Tax Return with the Internal Revenue Service ("IRS") for the tax year 2015 where he made a written declaration under penalty of perjury that the return was true and correct. He intentionally and voluntarily did not report as income payments that he received from the private deals in 2015 even though he knew he was required to report this income and it was material to the IRS. Instead, Mr. Falaschi falsely reported that his gross income was much lower. The parties agree that the taxes Mr. Falaschi owed to the IRS on his unreported income were in fact paid.

Therefore, Mr. Falaschi now agrees that he conspired to take government property in violation of 18 U.S.C. §§ 371 and 641, and that he filed a false tax return in violation of 26 U.S.C. § 7206(1).